GEORGE W. PARKS, PLAINTIFF IN ERROR, v. SUMPTER TURNER AND HENRY RENSHAW, TRADING UNDER THE COMMERCIAL FIRM OF TURNER & RENSHAW.

In Louisiana, the Supreme Court of the State reviews the questions of fact as well as of law which are brought up from the courts below; and when it reverses a judgment upon either ground, it gives the judgment which the inferior court ought to have given.

But when a case is brought before this court by a writ of error, it can only review questions of law; and, therefore, where the validity of a verdict of a jury is brought into question, the practice which prevails in the State courts of Louisiana is inapplicable in the courts of the United States.

Hence, where the jury found a verdict in general terms for the plaintiff in a suit upon a promissory note, without finding the amount due, which the laws and practice of Louisiana require them to do, and, the court then gave judgment for the amount of the note, this would have been adjudged to be a cause of reversal of the judgment by the Supreme Court of the State, but cannot be so held by this court.

The sufficiency of the verdict must be judged by the rules of the common law and the Statutes of the United States, and not by the laws and practice of Louisiana. The act of 1824 (4 Stat. at Large, 62) does not include such a case.

By the common law, although a judgment in such a case might not have been strictly proper, yet under a power of amending the verdict, the judgment can stand, because the plea having been that no consideration was given for the note and the verdict being for the plaintiff, it necessarily found that the whole amount was due.

The 32d section of the Judiciary Act provides for this case by enjoining upon this court to disregard niceties of form, and so it was decided in 16 Peters, 321.

The Constitution of Louisiana requires the State judges to give reasons for their decisions; but this is not operative upon the judges of the Circuit Court of the United States. On the contrary, their reasons form no part of the record when the case is brought up to this court.

THIS case was brought up, by writ of error, from the Circuit Court of the United States for the Eastern District of Louisiana.

The plaintiffs, Turner & Renshaw, sued the defendant, Parks, in the Circuit Court of the United States for the Eastern District, at New Orleans, to recover $5969.22, due by promissory note executed by Parks to the plaintiffs. After exceptions over-

ruled, the case was submitted to a jury, who returned the following verdict:

"We, the jury, find for the plaintiff.

"New Orleans, May 14th, 1849.

"H. R. Wood, *Foreman;*"

which, on motion, was set aside, and the case submitted to another jury, who returned the following verdict:

" We, the jury, find for the plaintiff.

"New Orleans, 15th May, 1849.

"Geo. M. Pinckard, *Foreman;*"

On which verdict the following judgment was entered:

" In conformity with the prayer of the petition and the verdict of the jury, it is ordered, adjudged, and decreed, that the plaintiffs, Turner & Renshaw, recover from the defendant, George W. Parks, the sum of five thousand nine hundred and sixty-nine dollars and twenty-two cents, with interest thereon, at the rate of six per cent. per annum, from the first day of January, A. D. 1848, until final payment, and costs of every nature."

" Judgment signed 19th May, 1848.

(Signed,)     Theo. H. McCaleb,

*U. S. Judge.*"

Parks sued out a writ of error and brought the case up to this court.

It was argued by *Mr. Henderson*, for the plaintiff in error, and *Mr. Mayer*, with whom was *Mr. Strawbridge*, for the defendants in error.

*Mr. Henderson*, for plaintiff in error.

There are two most manifest errors in this case. First, in the verdict of the jury, which is found thus: " We, the jury, find for the plaintiff."

But the verdict specifies *nothing* which the jury find for the plaintiff, and is in direct opposition to Art. 522, Code of Practice; and is adjudged error by the Supreme Court of Louisiana. 13 La. Rep. 109; 14 La. Rep. 344.

The second error is, that the court gave *no reason* for its judgment. This is fatal. It was the requirement of the Constitution of Louisiana of 1811, and is readopted in the new Constitution of 1845, wherein article 70 provides: " The judges of *all the courts* within this State shall, as often as it may be possible so to do, in every definite judgment, refer to the particular law in virtue of which such judgment may be rendered; and, in *all cases*, adduce the reasons on which their judgment is founded."

The cases in 4th Martin, 463, 4, 5, and in 12 La. 143, pronounce the judgment *unconstitutional* which furnishes no reasons for its decree. And the cases are numerous where this omission is adjudged error. 4 Mart. 463; 12 La. 143; 2d Annual, 59; 10 Mart. 56; 5 Mart. 687 – 689; 11 La. 162; 13 La. 13 and 108.

This court will of course take no notice that the rules of practice in the State courts furnish the rules of practice on the *law side* of the Circuit Court of the United States for the District of Louisiana. And we admit, that were these exceptions before the Supreme Court of Louisiana, that the court, after reversing the judgment, would substitute themselves for the jury, and give a new and correct judgment, *without a verdict.*

But this court has repeatedly decided that it cannot, in a *law case, re-try the facts,* as the Supreme Court in Louisiana may do. Therefore, on reversal for the errors above shown, this court will award a *venire de novo.*

The counsel for the defendants in error contended that there certainly was a verdict — and a legal and valid one — rendered by the jury, fully authorizing the judgment pronounced. If it be meant that the verdict is for no particular sum, we answer, simply, that this does not vitiate either verdict or judgment; although, in strictness of form, the sum should perhaps be specified. But "the finding of a jury must be construed with reference to the pleadings." Trepagnier *v.* Durnford, 5 Mart. R. 452; Harrison *v.* Faulk, 3 La. Rep. 70. Thus, where a defendant, assuming the attitude of plaintiff in reconvention, had pleaded that the plaintiff owed him a larger specific sum than he owed plaintiff, and the jury found for defendant generally, without stating any amount, the court gave judgment in his favor for the difference or surplus. Orleans Nav. Co. *v.* Bingey, 6 Martin, N. S. 689; Irwin *v.* Ware, 1 Martin, 645. So, in case of a judgment by the court for no specific amount, it must be construed with reference to the pleadings. Melançon's Heirs *v.* Duhamel, 3 Martin, N. S. 7; Rochelle's Heirs *v.* Cox, 5 Louisiana Rep. 287.

In the present case, the prayer of the petition distinctly claims a specific amount, with interest and costs; and the verdict and judgment must of course be construed with reference thereto.

As to the last cause of error assigned — "That the judgment contains no reasons," it is enough to reply, that the court could not decide otherwise than the jury found; and all reasons for judgment were therefore superfluous. Parks, although under section 23 of the State Act of 1839, p. 172, not really entitled to a trial by jury, had made them his judges, and they decided against him. The power of the court became thus limited to

4 *.

sanctioning their verdict. "A judgment, which gives as the only reason why it was rendered — that the jury has found a verdict for plaintiff — will be held valid and sufficient." McDonough v. Thompson, 11 Louisiana Rep. 565.

Mr. Chief Justice TANEY delivered the opinion of the court.

The material facts in this case may be stated in a few words. Turner and Renshaw, the defendants in error, filed their petition in the Circuit Court of the United States for the Eastern District of Louisiana, alleging that Parks, the plaintiff in error, was indebted to them in the sum of fifty-nine hundred and sixty-nine dollars and twenty cents, upon a promissory note for that sum, drawn by Parks, payable to his own order, and by him indorsed to the plaintiffs. A copy of the note is exhibited with the petition.

Parks in his answer states, that he denies all and singular the allegations in the petition except as therein afterwards admitted:— and says that the said note was given without any consideration whatever, and is therefore a *nudum pactum*, and void.

Upon this issue the case was tried by a jury, who returned a verdict in the following words: "We the jury find for the Plaintiff."

And upon this verdict the court gave judgment in favor of Turner and Renshaw for the sum due upon the note; and the present writ of error is brought by Parks to reverse that judgment.

Two objections are taken by the plaintiffs in error.

1st. That the verdict merely finds for the plaintiffs, in the Circuit Court, but does not find how much was due to them; and that no judgment therefore could be lawfully entered on that verdict.

2d. That the Circuit Court gave no reason for its judgment.

These objections have been argued altogether upon the laws of Louisiana regulating the proceedings in its courts of justice; and which, under the act of Congress of 1824, are supposed to be obligatory upon the Circuit Court of the United States.

Article 522 of the Code of Practice declares, "that the form of a general verdict consists in the foreman indorsing on the back of the petition those words: ' verdict for the plaintiff for so much, with interest,' if it has been prayed for; or verdict for defendant, according as the verdict is for plaintiff or defendant."

And the 70th article in the new Constitution of Louisiana, adopted in 1845, provides that "the judges of all the courts within the State, shall, as often as it may be possible so to do, in every definitive judgment, refer to the particular law in virtue of which such judgment may be rendered; and in all cases adduce the reasons on which their judgment is founded."

It is evident, therefore, that if this case depended upon the laws and practice of Louisiana, the judgment of the Circuit Court could not be maintained. Either of the objections would be fatal. And the case of Hosea's widow and heirs *v.* Miles, 13 Louisiana Reports, 107, is directly in point upon both grounds.

But it is difficult to apply the rules of Louisiana practice in a case where the validity of a verdict is in question. The appellate court of that State has jurisdiction of the fact as well as of the law; and in deciding upon the fact, the court is not bound by the finding of the jury in the inferior court, but may decide in opposition to the verdict, if they think it was not warranted by the testimony in the record. And when they reverse the judgment of the court below, for error in fact or in law, they at the same time give the judgment which the inferior court ought to have given.

Upon an appeal, therefore, to the Supreme Court of the State, for errors like those now alleged to have been committed by the Circuit Court of the United States, although the judgment would have been reversed, yet the State court would at the same time have given judgment in favor of the defendants in error for the full amount of their debt. They would not have been delayed in the recovery of their money by mere technical objections to the proceedings in the inferior court, nor subjected to the expense of another trial, and perhaps another appeal. The case of Hosea's Widow and Heir *v.* Miles, shows the course of proceeding in the State courts. For precisely the same errors now alleged in the case before us, were committed in that case by the court below; and although the Supreme Court reversed the judgment, on both grounds, they at the same time gave judgment in favor of the appellee for the amount due upon the note.

Now as to the first objection, we certainly cannot adopt in this court the practice and mode of proceeding in the appellate court of Louisiana. For a writ of error can bring up to this court nothing but questions of law. And as the whole practice of Louisiana cannot be adopted in a case of this description, is the Circuit Court bound to follow it? and must the validity of this verdict depend upon the rules of the common law, and the acts of Congress, or upon the formula prescribed by the Louisiana code of practice? Unquestionably the force and operation of the verdict when the case is brought here, depends upon the rules of the common law. It is conclusive upon this court as to the fact found, while in Louisiana it is open to revision and reversal in the appellate court. And if the conclusive force and effect of a verdict depends upon the rules of the common law, it would seem to follow, that what is a sufficient finding by the jury to

constitute a legal verdict upon the issues joined, and to make it operate as such, must also depend upon the rules of the common law, except in so far as they may be modified by acts of Congress. And while this court is bound to give effect to the verdict according to the rules of the common law, it can hardly be required to look elsewhere, in order to ascertain what finding of the jury is a verdict, and entitled to the conclusive effect which the common law gives it. And if in this case it had appeared that the verdict had been delivered orally by the foreman and recorded by the court, and not indorsed on the back of the petition, this court could not on that account have treated the finding as a nullity, and refused to it the authority and force of a verdict.

Besides, the enforcement of the Louisiana practice in the Circuit Court of the United States, would place the suitors in that court in a worse condition than the suitors in the State courts, and an accidental departure from the prescribed form would be much more injurious in its consequences. We think the sufficiency of the verdict, in its form, as well as the question of its force and effect must depend upon the rules of the common law and the statutes of the United States. And that the qualified adoption of the practice of Louisiana by the act of 1824 was not intended to carry it to the extent now contended for by the plaintiff in error.

We proceed, therefore, to consider the case upon the principles of the common law and statutes of the United States.

The answer of the plaintiff in error, by necessary implication, admits that he executed and indorsed the note. For the only defence he takes in his answer is that it was given without consideration, and was *nudum pactum*. The issue was joined upon this point only. The answer contains no other objection to the validity of the note, nor does it allege that any part of the note had been paid, nor that he had any set-off against it, and upon these pleadings and issue the jury say they find for the plaintiff. Now this verdict undoubtedly finds that the note was given upon a good consideration, although the jury do not say so in so many words; and it is equally clear, that in finding that it was given upon a valid consideration, they must necessarily have found also that the full amount specified in the note was due to the defendants in error. For there was no allegation and no evidence that any part had been paid. No one, we think, can read the pleadings and the verdict without being satisfied that this is the true meaning of the jury. There is no ambiguity or uncertainty in it. And the judgment in the Circuit Court is evidently according to this finding, and is therefore correct, unless there is some rule of law which renders the verdict inoperative and void.

Parks *v.* Turner et al.

It is certainly the province of the jury, in a case of this kind, not only to determine whether the plaintiff is entitled to recover, but to find also and at the same time the amount due. And, in a court acting strictly upon common law forms and modes of proceeding, no judgment could have been legally entered, because the verdict omits to specify, in express terms and in the established form, the amount which the defendants in error were entitled to recover. How far the verdict might even yet be amended in the Circuit Court, is another question. For although the rule was anciently very strict in not permitting amendments to verdicts, yet, in later cases, this strictness has been relaxed in order to prevent a failure of justice; and while the English courts adhered to the established forms they often prevented them from working injustice to the parties by a liberal use of the power of amendment.

Thus in the case of Richardson *v.* Mellish, 3 Bing. 334, 346, a general verdict had been rendered and damages assessed upon a declaration in which one count was good and the others bad. A judgment upon this verdict was rendered in the Court of Common Pleas without adverting to the insufficiency of some of the courts, and the case was afterwards removed to the King's Bench by writ of error. As the record stood, the judgment of the Court of Common Pleas must undoubtedly have been reversed. But while the case was pending in the King's Bench, and had been argued there, and this error insisted upon as a ground for reversal, the Court of Common Pleas amended the verdict by entering it for the plaintiffs on the good count, and for the defendant in those counts which did not show a cause of action. The court was convinced, by the notes of the judge who tried the case, that the evidence offered at the trial applied to the good count, and that there would be a failure of justice if the judgment was reversed upon this technical objection, which could and would have been readily removed if made at the trial.

We refer to this case to show that the English courts when acting altogether upon the principles of the common law, will amend a verdict actually rendered by the jury and recorded, if the court is satisfied, from the evidence and the pleadings, that in the form in which it was given by the jury it does not accomplish what they intended, and would, on that account, fail to do justice to the party in whose favor they found.

But it is not necessary to examine further into the practice of courts acting upon the rules of the common law; nor to inquire whether the verdict in this case, if defective in form, might not yet be amended in the Circuit Court. For we are satisfied that the thirty-second section of the act of Congress of

1789, chap. 20, removes all difficulty in the case, and makes it the duty of this court to affirm the judgment rendered on this verdict.

The section of the law referred to directs the courts of the United States to proceed and give judgment according as the right of the cause and matter in law shall appear to them, without regarding any imperfections or defects, or want of form in the writ, declaration, or other pleading, return, process, judgment, or course of proceeding whatever, except those only in cases of demurrer, which the party demurring shall specially sit down and express together with his demurrer as the cause thereof. This is a remedial statute, and must be construed liberally to accomplish its object. It not only enables the courts of the United States, but it enjoins it upon them as a duty, to disregard the niceties of form, which often stand in the way of justice, and to give judgment according as the right of the cause and matter in law shall appear to them. And although verdicts are not specially mentioned in this provision, yet the words " or course of proceeding whatever," are evidently broad enough to include them; and, as they are within the evil, they cannot, upon a fair interpretation of the statute, be excluded from the remedy.

The question, however, has been already decided in this court in the case of Roach *v.* Hulings, 16 Pet. 321, 322. In that case, as in the one now before the court, the verdict was defective according to strict technical rules, and no judgment could legally be entered upon it. But this court held that the act of Congress above mentioned was intended to remove objections of that description where they impeded the administration of justice, and that it extended to imperfections and want of form in the findings of juries, as well as to the other proceedings in the suit. And although, according to the strictness required by common law rules, the judgment must have been reversed, the court sustained it upon the ground that the substantial meaning of the verdict was manifest, and the defects objected to cured by this act of Congress. The intention of the jury in the case before us is equally clear upon the record; and, upon the principles decided in the case of Roach *v.* Hulings, equally within the protection of the act of Congress. The right of the cause, and the legal obligation of the plaintiff in error to pay this money, is sufficiently apparent upon this record.

The second objection, taken by the plaintiff in error, is obviously untenable. The provision in the Constitution of Louisiana requiring the judges in the different courts to adduce the reasons upon which their judgment is founded can, of course, have no authority in the courts of the United States unless adopted by an act of Congress. And the act of 1824, adopting, to a certain

extent, the practice of the State courts, has no reference to a provision of this description. Indeed, such a provision is inconsistent with the practice and modes of proceeding in the courts of the United States. For the reasons upon which the opinion of the inferior court is founded form no part of a record when a case is brought here by writ of error. They cannot properly be inserted in a bill of exceptions. The point or principle of law, as applied to the case before the court, is all that is certified, and not the reasons upon which the court decided.

The judgment of the Circuit Court is therefore affirmed.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the Eastern District of Louisiana, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged by this court, that the judgment of the said Circuit Court in this cause be, and the same is hereby affirmed, with costs and damages, at the rate of six per centum per annum.