St. Peter's Church *v.* Beach.

St. Peter's Church *vs.* Harvey Beach.

Where the title to land was in issue, and the plaintiffs claimed title under an ancient grant from a committee of the original proprietors of the town, and also by adverse possession, it was held, that in connexion with proof of the loss of the proprietors' record-books, the plaintiffs might prove, by the testimony of a witness who had seen the books, that one of them contained a record purporting to be the record of such a grant, and might also prove in the same way the contents of the record,—not only for the purpose of proving a valid grant, but also for the purpose of proving that the entry of the plaintiffs was made under a claim of title; and also for the purpose of proving, by the description

of the premises contained in the record, the extent and boundaries of the land claimed by the plaintiffs at the time of their entry, and the nature and extent of their continued possession.

Where the plaintiffs in such a case, being an ecclesiastical corporation, for the purpose of proving their continued possession of the land under a claim of right, and the extent of that claim, offered the testimony of a certain witness, that during the life-time of his father, who was a warden of the corporation, and prior to the suit, the witness heard his father, as such warden, warn persons digging turf upon the land to desist, charging them with trespassing; and that the witness heard his father while so doing state to those persons that the church claimed the whole of the land in dispute and had a grant of . the same from the ancient proprietors,—it was held that the evidence so offered was admissible.

It was also held that the plaintiffs, in order to prove their title by adverse possession, might prove that on various occasions prior to the alleged trespass of the defendant, the individual wardens, vestrymen and society's committee of the corporation, having the management of its affairs, and acting or claiming to act as its officers and in its behalf, had exercised various acts of ownership over the premises in dispute, at the same time claiming the title thereto to be in the corporation.

In such a case, the defendant having asked the court to charge the jury that the records of the corporation showed that they entered under a license from the original proprietors, and that, if the jury should find that fact, the subsequent occupation of the corporation must be taken to be in subordination to the title of the proprietors, and not as adverse thereto, until by some corporate act that title was renounced and an adverse occupation commenced; and that the acts of the officers of the corporation, though accompanied by an assertion of title in the corporation, unless such acts were expressly authorized or ratified by the corporation, were not legal evidence of such adverse holding; and the court charged the jury that it was a question of fact for them upon all the evidence in the case whether the corporation had occupied under a license from the ancient proprietors and in subordination to their title, or whether they had occupied adversely and under a claim of title in themselves uninterruptedly for fifteen years:—it was held that such instruction was correct.

In an action of trespass, if the wrongful act is neither wanton nor malicious, the jury are not at liberty to give more than actual damages; and they have no right, in such a case, to take into consideration the expenses incurred by the plaintiff in the prosecution of his suit.

The expenses of a suit in which redress is sought for an injury, are no part of the natural and proximate consequences of the injury, and can not be made the subject of averment in the declaration or of proof on the trial.

A jury is allowed to take them into consideration in cases of wanton and malicious injury, only because the law furnishes no definite rule of damages in such a case, in consequence of which the jury is at liberty, in the exercise of its discretion, to consider such a known and actual incident of the injury, although not its natural consequence.

But where the injury is not malicious or wanton, the law furnishes a definite rule of damages by which the jury must be governed.

St. Peter's Church *v.* Beach.

TRESPASS *quare clausum fregit*, tried to the jury upon the general issue with notice.

The suit was brought to recover damages for an entry upon a certain lot of land in Milford and the removal of a fence which enclosed the southerly portion of the lot. It was admitted upon the trial that the defendant had entered upon the lot and removed the fence, but the parties were at issue in relation to the title to the lot, especially in regard to the southerly part of it. It was conceded that the title was originally in the proprietors of common and undivided lands in Milford; that the lot was not embraced in any known allotment; that it was a strip of land lying between the high-way and river, never entirely enclosed until the erection of the fence in question; that a brook called " Ingersoll's brook " bounded it on the north, and that there was originally a swale or swampy run on the south of it now reclaimed; that the professors of the Church of England erected a church on the northerly part of the lot in 1770, which stood and was occupied by them and the plaintiffs until 1834; that the church was then removed about thirty feet from its first position, and thus remained until 1854, when it was taken down; that a new and larger church was then erected substantially upon the same site, and that then the whole lot was enclosed by the plaintiffs or by members of the society acting professedly on their behalf. It was also admitted that a school-house was erected on the southerly portion of the lot in 1837, by the district in which it is situated, which school-house was still remaining there and was occupied by the district.

The plaintiffs claimed title to the lot by grant or conveyance from the proprietors' committee, and also by uninterrupted adverse possession from the year 1770, when the first church was erected upon it; and further claimed that the erection and continuance of the school-house on the southerly portion of the lot was in subordination to their title.

The defendant denied that any conveyance was ever made to the plaintiffs, and claimed that their records anterior to 1770, copies of which were in evidence, shewed that they

entered under a license, and the defendant denied that the plaintiffs had ever had any exclusive or adverse possession of the southerly portion of the lot, and claimed that as a descendant of one of the original proprietors, and as a member of the school-district, he had an interest in the premises which justified the acts complained of. The records referred to were as follows :—

" We, the subscribers hereto, grant our consent to the pro-fessors of the Church of England, (as by law established) to erect a church south of Ingersoll's brook, as near as may be convenient, leaving sufficient highway between said building and the front of the lot adjacent. Begun in Milford, January 4th, 1765.

(Signed,) Rich. Ball, Nathan Smith " (and thirty others.)

Also, under date of 1769, the following :—

" At a meeting of the members of the Church of England, held at Capt. Isaac Miles', said Miles moderator, Abraham Tomlinson, clerk : *Voted*, to set the church the south side Ingersoll's brook, commonly so called, and Abraham Tomlinson to carry round the old subscription of 1765, to get leave to set the church as above said."

Another copy of record was also introduced, as follows:—

" At the annual meeting of the parishioners of St. George's Church, Milford, duly warned and held in their parish church of St. Peter, after divine service on Easter Monday, April 12, 1852. * * * The following preamble and resolutions were then adopted.

" *Whereas*, no formal title has ever been adopted by this parish, and whereas, at its first action as a body in 1764, the persons acting styled themselves persons 'desirous to worship God according to the form of the Church of England;' also the grant of the church lot in 1765, was to them as 'professors of the Church of England;' also in the instrument signed by them in 1766, in compliance with the colonial law they declare and profess themselves to be members of the Church of England, and in their proceedings in 1766, 1767, 1769 and 1775, call themselves 'professors' or 'members' of the Church of England; also in an instrument signed in 1788,

St. Peter's Church *v.* Beach.

according to the law of the state, requiring names to be entered with the clerk, the said persons acting profess to belong to the Episcopal society of Milford, &c., &c.

"*Resolved,* that we will hereafter take and use the name, style and title of St. Peter's Church, Milford."

The plaintiffs did not produce any conveyance or record of a conveyance from the proprietors to them; and it was admitted that the records of deeds of lands for the town were complete and contained no such record, but the plaintiffs relied on secondary evidence that such a grant had been made and was lost. In support of their claims the plaintiffs proved that the proprietors of common and undivided lands in Milford abandoned their organization about the year 1805; that the records of their doings prior to such abandonment had been missing from the town-clerk's office ever since about the year 1835, and that although diligent search had been made, at various times, by the town-clerk and others in the town-clerk's office and elsewhere for the records, they had never been discovered and were now lost. Thereupon the plaintiff offered the testimony of Edward R. Lambert, which was as follows :—

"I am a native of Milford and resided there until about twelve years ago. In 1834, I examined the proprietors' records and town-records for the purpose of making a small publication containing an account of the towns comprising the old colony of New Haven. The book was published in 1838. I have examined the records recently. When I examined them last, I did not find all the books that I did twenty years ago. There were two missing, and perhaps three. I have not been able to find on the books now there, any evidence of title to this property. I have examined with reference to this. When I examined the records in 1834, I found there a record of a grant to the Episcopal society or those professing to belong to the Church of England. The proprietors' records were in the town-clerk's office for safe keeping. [The book printed by Lambert in 1838 exhibited.] This book contains the boundaries as I found them on the record. [Extract from the book, entitled "History of the

Colony of New Haven," page 109, as follows:—" Church raised in 1771, and consecrated by the name of St. George's Church, in 1775. The land on which it stands was purchased of the town, and by the deed of conveyance is bounded north by a brook, east by the mill river, south by a swamp and west by the road."] I have never been a member of this society and am disinterested. I made my book and collected facts from the record. I have an impression that I have so distinct a recollection of seeing this record that I can recollect the place it had on the page. There was no controversy about this title at that time, nor for some years after." Cross-examined :—" The statement in the book conforms to my present recollection, I think. It may be a misnomer to call it a deed. I think it was a grant. My impression is that I might find it on the book of deeds. My present impression is that it was a grant from the proprietors' committee to the society of the Church of England. My impression is that no meeting of proprietors was called ; that they took it on them to act without any meeting of the proprietors, and that Lewis Mallett and Abraham Tomlinson signed it, can't say who else, perhaps Stephen Gunn; that they talked around without any meeting of the proprietors. Harvey Beach is a descendant of one of the original proprietors,—from John Rogers." Direct examination resumed :— " I have no doubt that I saw in 1834, on the record in the town-clerk's office, something from which I made up the statement in the book ; my belief is, a record conveying to this society, with these boundaries, the land as described in my book. Can't say positively what."

To the admission of this evidence the defendant objected. The plaintiffs claimed that the evidence was admissible, on the ground ; 1st. that the original record being lost, the testimony of Lambert afforded the best possible evidence of its contents ; and 2nd. that the original record, if in existence, would be admissible as tending to prove a grant of the described premises to the Episcopal society by the proprietors or their committee, which grant, even if not effective as a

valid conveyance of title, was evidence of a claim of right, on the part of the society, to the premises therein described, and conduced to prove the extent and boundaries of the claim under which, as they insisted, the society entered into possession of the lot when they erected their church in 1770, and the nature and extent of their continued possession. The court admitted the evidence for the purposes claimed by the plaintiffs.

The plaintiffs for the purpose of proving their continued possession under a claim of right, and the extent of that claim, and that it embraced the whole tract, offered to prove by James F. French, that during the life-time of the father of the witness, (Andrew French, who was a warden of said society,) and while he was warden, and prior to this suit, he, the witness, heard his father as such warden, warn persons who were digging turf upon the land and removing it, to desist, charging them with trespassing; and while so warning them off, and in connexion therewith, and upon the ground, state to such persons that the church claimed the whole lot from Ingersoll's brook to the swamp, and had a grant of the same from the proprietors of common and undivided lands in Milford to those boundaries. To the admission of this evidence, so far as it embraced the declarations of Andrew French, the defendant objected, but the court admitted the evidence.

The plaintiffs in order to prove their title by adverse possession, offered among other testimony, evidence to show that on various occasions prior to the alleged trespass, the individual wardens, vestrymen and society's committee of the society, having the management of its affairs, and acting, or claiming to act, as such officers and in behalf of the society, had exercised various acts of ownership over the premises in dispute, at the same time claiming the title thereto to be in the society. To the admission of this evidence the defendant objected, on the ground that the plaintiffs being a corporation, the individual acts of those officers were not admissible as evidence of an adverse holding, unless the same were authorized or ratified by vote of the

society. The court overruled the objection and admitted the testimony.

On the argument of the case, the defendant claimed that the records of the society above set forth showed that they entered under a license from the original proprietors, and that the law was so that if the jury should find that they did not enter under a grant or conveyance, but under a license from certain of the proprietors, their subsequent occupation must be taken in subordination to the title of the proprietors, and not as adverse thereto, until by some corporate act of the society that title was renounced and an adverse occupation commenced, and that the acts of the officers of the society, though accompanied by an assertion of title in the society, unless such acts were expressly authorized or ratified by the society, were not legal evidence of such adverse holding; and the defendant prayed the court so to instruct the jury.

The court did not give to the jury the specific instructions prayed for by the defendant, but instructed them that the plaintiffs could not acquire a title by possession, if such possession was taken and held under a license, and not adversely and under a claim of title; and that it was a question of fact for the jury, upon all the evidence in the case in relation to the conduct of the society and of its officers collectively and individually in the management of its affairs, and in relation to the occupation and use of the lot, whether the society had occupied the whole lot, and if so whether they had occupied under a license from, and in subordination to, the title of the proprietors, or whether they had occupied adversely and under a claim of title in themselves, uninterruptedly for a period of fifteen years.

The plaintiffs claimed that the defendant removed the fence in a wanton and malicious manner. The defendant claimed that he removed it without malice or wantonness, for the purpose of asserting a right to the premises, and that no damages were recoverable against him except the actual damages, which were admitted not to exceed ten dollars, and prayed the court so to instruct the jury. The court charged the jury that in this form of action they had a right

to give exemplary damages if they should find that the tres-
pass was wanton and malicious; but that if they should find
that the defendant committed the trespass for the purpose of
asserting a title to the premises, they should give actual
damages only : but that, in the latter event, if they should
find that by the act of the defendant the plaintiffs had been
compelled to come into court to vindicate their right to the
premises, the jury might lawfully take into consideration the
expense attending such vindication, in excess of the cost re-
coverable, and give such further sum on that account as
they should deem reasonable.

The jury rendered a verdict for the plaintiffs for $197.91
damages. Thereupon the defendant moved for a new trial
for error in the rulings and charge of the court.

*Baldwin* and *Peck*, in support of the motion.

1. The Episcopal society was in possession of the prop-
erty under a license, signed by sundry individuals, and not
under any deed or valid grant. Being in possession of the
property as licensees at will, the society can not be made a
disseisor without some act of its own as a society. The
mere orders or directions of individual members would not
change the holding of the society.

2. The testimony of Lambert was inadmissible. In order
to admit it there must have been some evidence of the legal
existence of an original deed. There could have been no
valid grant or deed, because the plaintiffs, at the time when
the church was built, could not purchase or acquire title.
The proprietors of common and undivided lands could not
give title ; their power being only to manage, regulate and
divide lands. *Kelsey* v. *Hanmer*, 18 Conn., 311. Stats. of
1723, 1748, 1791, *de common fields*.

3. Counsel fees and expenses can not be taken into con-
sideration by a jury in estimating damages where malice is
not alleged or proved. In such cases actual damages alone
can be recovered. Sedgw. on Dam., 97, 98. *Linsley* v. *Bush-
nell*, 15 Conn., 225. *Barnard* v. *Poor*, 21 Pick., 381.

4. The declarations of French were the declarations of a

party, and could not establish a title in his own favor. 1 Greenl. Ev., § 145.

*Blackman* and *C. R. Ingersoll*, contra.

1. The testimony of Lambert was admissible, under the well settled rule, allowing proof of the contents of a lost record, or other document, by secondary evidence. 1 Greenl. Ev., § 509. Evidence of an ancient grant from the proprietors' committee of Milford, as described by Lambert, was admissible. Such grants have been common and are confirmed by statute. Rev. Stat., tit. 29, sec. 34. The appointment of the committee will be presumed. *Brownell* v. *Palmer*, 22 Conn., 107. But even if ineffective by itself to establish a title, evidence of such a grant was admissible in support of a title by exclusion and adverse possession. It conduced to prove a claim of title by the plaintiffs to the lot as therein bounded, when they erected their church upon the same, thus showing the character of their entry and the nature and extent of their possession. *Rogers* v. *Hillhouse*, 3 Conn., 398. 1 Sw. Dig., 162.

2. The declarations of Andrew French, the warden, made upon the ground, as an officer of the church, and while as such officer warning persons not to trespass upon the lot claimed by the plaintiffs, were admissible as part of the *res gestœ*, giving character to the acts of ownership and claims of exclusive possession which he was at the time asserting in their behalf. *Williams* v. *Ensign*, 4 Conn., 456. 1 Greenl. Ev., § 108.

3. The acts of ownership exercised over the premises by the officers and agents of the society, whether individually or collectively, while in the management of its affairs, and at the same time claiming the title of the premises to be in the society, were properly admitted as evidence of an adverse holding by the society. An express vote of the corporation was not necessary to prove their authority or the acceptance of their acts by the society. Ang. & Ames on Corp., sec. 186. *Wardens of Trinity Church* v. *Hall*, 22 Conn., 125.

4. The charge of the court upon the point of damages was

St. Peter's Church *v.* Beach.

correct, and was in accordance with the rule uniformly recognized by our courts in actions of trespass. *Edwards* v. *Beach*, 3 Day, 447. *Churchill* v. *Watson*, 5 id., 140. *Denison* v. *Hyde*, 6 Conn., 508. *Linsley* v. *Bushnell,* 15 id., 225. *Noyes* v. *Ward*, 19 id., 250.

ELLSWORTH, J.    There is no error in the admission, by the court below, of the testimony of Lambert and French, for the purposes stated in the motion.    The reasons are too obvious to need comment.

As to the nature and consequences of long continued possession of real estate, which possession is supposed to have commenced under license, and is claimed in the course of time to have become adverse, we think the court stated the law correctly, and accompanied the submission of the evidence with such remarks as the case called for.    But in the charge of the court as to the rule of damages, the court has undoubtedly fallen into a mistake.

It is a part of the case, that the actual damage suffered by the plaintiffs in the destruction of their property does not exceed $10, and that the defendant's conduct was not wanton or malicious.    Of course the plaintiffs were entitled, as the court stated, to recover their actual damage; but the court further instructed the jury that if the plaintiffs had been compelled to come into court to vindicate their rights, the jury might take into consideration the expenses attending such vindication beyond the taxable costs, as actual damage. If this be a just interpretation of the rule of actual damages, such damages will become just and legal in every case whether of tort or contract, for the plaintiff may always say that he is compelled to come into court to vindicate his rights.

But not to criticise the form or language of the charge, we think there is in it a radical error, viz: that in cases where a penal sum or smart money are not to be allowed, the expenses of the litigation may be allowed as damages; for the judge stated that none but actual damages were to be assessed, and proceeded to say that the expenses might be allowed; and

although the actual loss or injury did not exceed $10, the jury rendered a verdict for $197.91. Now the expenses of litigation are never damages sued for in any case where the action is brought for the wrong itself, not even if the tort be wanton or malicious. They are not the "natural and proximate consequence of the wrongful act," which is the universal rule, but are remote, future and contingent. They may follow the wrong and are very likely to, but not of course or necessarily. Besides damages sued for must be such as exist, and can be and are, in some form satisfactory to the law, stated in the declaration and made matter of proof; but these expenses accrue subsequently to the bringing of the suit, and can not be stated in the declaration, nor can they become matter of proof. Who ever knew the plaintiff to prove his lawyers' bills, or the tavern bills of himself and witnesses and the like, to the jury, or witnessed on these points a cross-examination by the defendant's counsel. Obviously these things do not fall within the issue, and are never made the subjects of enquiry or investigation on trial.

In actions of tort, founded on the misconduct or culpable neglect of the defendant, it is usual and entirely proper for the judge to say to the jury that they are not necessarily confined in assessing damages to the actual loss of property to the plaintiff, but may allow smart money measured by the circumstances of aggravation, and may, from their general knowledge of the course of the courts, if the case warrants it in their judgment, take into account the expenses of the trial beyond the taxable costs. In cases where smart money is allowable, the amount of the verdict rests with the jury, who must exercise a wise and honest discretion; but in other cases, both of contract and tort, if there be no actual culpability, the law gives the rule of damages, and this the jury are bound to apply or a new trial will be granted. This is right, for honest men are sometimes obliged to resort to courts to get their differences settled; and where, though the form of the declaration may indicate a legal wrong, there is really no culpability whatever imputable to either party, smart money can not be allowed. The parties in these cases

St. Peter's Church *v.* Beach.

should be encouraged to appeal to the court on equal terms. The defendant should not be punished by being compelled to pay not only his own counsel but such as the plaintiff may please to select to advocate his claims against the defendant, but each should be left to conduct his own case, and in his own way, and at his own expense beyond what the statute allows in a bill of costs to the prevailing party. Besides, a different rule is entirely unequal, for the defendant, if he prevails, can never recover any more than a statute bill of costs.

We are not aware that the rule we have given is at variance with the current of authorities or the practice of courts. There are some remarks of judges, and perhaps an exceptional case or two in the reports, but we think, in every instance of this kind, there is a neglect to make very important distinctions. They do not discriminate between the cases, nor furnish a rule, as we have endeavored to do, of easy and general application in practice.

The case of *Linsley* v. *Bushnell,* 15 Conn., 225, is said to be in favor of the charge below, but we think otherwise. That case was one of culpable neglect and intentional misconduct. The judge in giving the opinion of the court, characterizes the wrong as a "wanton personal injury." *Noyes* v. *Wood,* 19 Conn., 265, is a case of assault and battery. *Beecher* v. *Derby Bridge Company,* 24 Conn., 132, contains the rule which we approve ; and the doctrine is the same in *Ives* v. *Carter,* 24 Conn., 392. In *Barnard* v. *Poor,* 21 Pick., 378, the rule is given in conformity with our views. We have carefully examined the two elementary books cited on the trial, (Greenleaf on Evidence, and Sedgwick on Damages,) where all the cases are found collected, and the subject is commented upon at length ; but we nowhere find any thing which shakes our confidence in the rule of damages we lay down in this case.

As the excess of damages above the $10, the amount of the actual damage, appears by the motion, and the plaintiffs are entitled to the $10, we allow them to retain the verdict

for that amount, upon their remitting the balance ; otherwise we advise a new trial.

In this opinion the other judges concurred.

New trial advised *nisi.*