**SMYTH SALES, Inc., v. PETROLEUM HEAT & POWER CO., Inc.**

No. 8365.

Circuit Court of Appeals, Third Circuit.

Argued Jan. 18, 1944.

Decided Feb. 24, 1944.

George W. C. McCarter, of Newark, N. J. (McCarter, English & Egner, of Newark, N. J., on the brief) for appellant.

Charles S. Barrett, Jr., of Newark, N. J. (Lum, Fairlie & Wachenfeld, of Newark, N. J., on the brief) for appellee.

Before MARIS and JONES, Circuit Judges, and KALODNER, District Judge.

MARIS, Circuit Judge.

The plaintiff brought an action for fraud and deceit in the District Court for the District of New Jersey. The first trial resulted in a nonsuit. This court reversed and ordered a new trial. 128 F.2d 697. The second trial resulted in a verdict and judgment for the plaintiff. This appeal followed.

The cause of action arose out of a contract entered into between the plaintiff and defendant in 1933, with especial reference to a clause therein which read as follows:

"It is understood that this is an exclusive agreement for the Dealer, insofar as Essex County, New Jersey is concerned, based on our present set up. In the event we purchase, or merge with any other companies, the business we secure through such sources in Essex County is not covered by this agreement, but a basis covering such business will be consummated at the time of such purchase or merger."

The plaintiff alleged that this contract obligated the defendant to pay the plaintiff commissions upon all sales of the defendant's fuel oil in Essex County, New Jersey, no matter by whom the sales were made; that sales were made by others; that the defendant failed to pay the plaintiff commissions upon these sales; that by concealing the fact as to the sales the defendant induced the plaintiff to sell its business to the defendant and to settle for commissions at substantially less than due. The jury by its verdict found all these facts in favor of plaintiff.

The defendant in its fifth separate defense, which is the only defense with which we have any concern upon this appeal, alleged that the clause which we have quoted should be construed as providing that the defendant is under no legal obligation to pay commissions upon business procured by a company which was purchased by the defendant subsequent to the exclusive agency contract; that the sales in Essex County upon which it did not pay commissions to the plaintiff were sales made by Electrol, Incorporated, a Missouri corporation, and by Electrol, Incorporated, a Delaware corporation, which was organized as a result of a reorganization proceeding under the Bankruptcy Act to take over the assets of the Missouri corporation. It urges that the district court erred in ruling that the defendant had not purchased the Missouri corporation and that it should have ruled as a matter of law that the defendant had purchased it. In order to prove that it had purchased the Missouri corporation, the defendant offered in evidence a number of documents.

The first document upon which the defendant relies is an agreement in the form of a letter dated April 18, 1935 written by Electrol Corporation of America to and accepted in writing by the defendant. In the letter Electrol Corporation of America states that its wholly owned subsidiary Electrol, Incorporated, a Missouri corporation, is in financial difficulties and proposes a plan of reorganization under Section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207. The reorganization plan envisages the purchase by the defendant of current claims against the Missouri corporation amounting to $64,750 and of deferred claims amounting to $98,317.24. All the assets of the Missouri corporation are to be transferred to a new company to be incorporated under the laws of Delaware. The Delaware corporation is to have an authorized capital stock consisting of not more than $300,000 par value of preferred stock and 200,000 shares of common stock without par value. The defendant is to transfer all claims it may have against the

Missouri corporation to the Delaware corporation and is to receive in exchange preferred stock of the par value of the claims and 158,977 shares of common stock. In addition it is to subscribe to $50,000 par value of the preferred stock of the Delaware corporation to provide working capital for that corporation. Electrol Corporation of America is to receive $50,000 par value of preferred stock and 41,023 shares of the common stock of the Delaware corporation and to have a representative upon its board of directors. The defendant is to enter into an agreement with the Delaware corporation to manufacture oil burning equipment for it and to pay for fuel oil contracts secured by the Missouri corporation. This proposal was accepted by the defendant, as we have stated.

The plan thus contemplated the reorganization of the Missouri corporation and the creation of a new corporation as its successor and assignee. Insofar as the Missouri corporation was concerned the defendant was to assume the status of a creditor only, since it was agreed that the defendant was to become the assignee by purchase of all the outstanding claims against that corporation. It is quite clear that the parties did not contemplate the purchase of the Missouri corporation by the defendant. They did contemplate that the defendant would obtain a majority of both the preferred and common stock of the Delaware corporation when organized. The most that can be predicated upon the letter of April 18, 1935, therefore is that the defendant was to become the controlling shareholder in a corporation not then in being.

The next document offered in evidence by the defendant is an agreement dated February 8, 1936, in which the defendant assigns to Morgan J. Hammers and George P. Robinson all its rights under the 1935 agreement with Electrol Corporation of America, and Hammers and Robinson assume all the obligations of the defendant under that agreement. Hammers and Robinson agree to cause either the Missouri corporation or the Delaware corporation when organized to enter into a contract with the defendant to solicit orders for the defendant's fuel oil, to be sold at prices established by the defendant and in line with prevailing prices and upon stipulated commissions. This was not only not an agreement on the part of the defendant to purchase a company but was the release by the defendant of any rights to purchase which it might have had under the 1935 agreement. By an assignment dated May 28, 1936, Hammers and Robinson assigned their rights in the 1935 contract to the Delaware corporation, its successors and assigns.

The next document relied upon is an agreement between the defendant and the Delaware corporation made May 28, 1936. In it the Delaware corporation undertakes to solicit orders for the defendant's fuel oil within territory in which the defendant has suitable facilities and the defendant agrees to pay a fixed commission not only upon sales made by the Delaware corporation but also upon sales made to customers previously secured by the Missouri corporation. This agreement was a sales agency contract and by no stretch of the imagination can it be treated as a purchase of the Delaware corporation by the defendant.

We accordingly conclude that the trial judge properly instructed the jury that there was no evidence of the purchase of a company by the defendant and that he did not err in refusing to rule as a matter of law that the Electrol sales were made by a company purchased by the defendant.

The defendant has another wholly different objection to the judgment entered against it. It asserts that the trial judge erred in molding the verdict of the jury as to punitive damages. The verdict as returned by the jury on March 12, 1943, was "for the plaintiff against Petroleum Heat & Power Company, Inc., for $6,925.56 damages plus interest and punitive damages not to exceed $1,500.00.". Upon motion of the plaintiff the verdict, insofar as it allowed punitive damages "not to exceed $1,500.00", was molded by the trial judge on April 6, 1943, "to the amount of $1,500.00". Thereafter on April 26, 1943, the trial judge, by an order reciting that "A verdict having been rendered by the jury in the above stated cause awarding the plaintiff damages in the sum of $6,925.56 plus interest and punitive damages not to exceed $1,500 against the defendant Petroleum Heat and Power Co., Inc., and the court having fixed the punitive damages at $1,500 and the Clerk having computed the interest at $2,-344.32", directed the entry of judgment for the plaintiff for $6,925.56 damages, $1,500 punitive damages, and $2,344.32 interest, besides costs of suit. The defendant urges that the verdict for punitive damages as

rendered by the jury was not merely informal but was uncertain and insufficient to support a judgment and that the trial judge was without power to mold the verdict as he did by fixing the amount of the punitive damages at the maximum limit indicated by the jury.

■ The validity of the amendment must be tested by the federal law. It has been held that though verdicts are not mentioned by name in the statute of jeofails (R.S. § 954, 28 U.S.C.A. § 777) that statute applies to verdicts. The court may amend the verdict and give judgment as the right appears without regard to any imperfection or want of form in the verdict.[1] The test is whether the verdict clearly manifests the intention and finding of the jury upon the issue submitted to them.[2] Although it is clear from the verdict rendered in the case now before us that the jury intended that the punitive damages should not exceed $1,500.00 it is impossible to determine what sum within that maximum the jury meant to award the plaintiff as punitive damages. Consequently the verdict was not sufficiently definite to enable it to be cured by an amendment. What the trial judge did was himself to fix the amount of the punitive damages. Indeed he so describes his action in the order of April 26, 1943. The guarantee of the Seventh Amendment that in suits at common law the right of trial by jury shall be preserved extends to the award of damages, since at common law the amount of damages was for the jury. The determination by the trial judge that the plaintiff should be awarded $1,500.00 as punitive damages was accordingly beyond his power. It follows that the amendment of the verdict was improper and that the judgment entered on the amended verdict as to punitive damages cannot stand.

■ The form in which the verdict for punitive damages was returned gives strong indication that the jury was confused as to its duty in the matter. Upon the former appeal this court held that the law of Connecticut as to the measure of damages must be applied to this case. In speaking of the right of the plaintiff to recover exemplary or punitive damages we said: "Thus, upon the retrial of this case, exemplary damages may be had, if the circumstances surrounding the commission of the tort fall within the rule of Connecticut cases which allow such damages." 128 F.2d 697, 702. By the law of Connecticut in certain tort actions a plaintiff may recover as damages an amount not to exceed the amount of his expenses of litigation which are not otherwise recoverable as taxable costs.[3] Although such damages have been designated punitive or exemplary they are in fact and effect compensatory.[4] Damages of this sort, limited to the amount of the plaintiff's expenses of litigation less his taxable costs, may be awarded by the jury only in those actions in tort which are founded upon the malicious or wanton misconduct of the defendant or upon such culpable neglect on the part of the defendant as is tantamount to malicious or wanton misconduct.[5] Although there is considerable authority to the effect that the jury may make the award without evidence as to what the plaintiff's actual expenses of litigation were,[6] several of the more recent Connecticut cases indicate that it is the better practice for the plaintiff to introduce such evidence.[7]

■ From this brief glance at the Connecticut law it will be seen that it is the jury's duty in such a case first to determine whether the defendant's conduct not only gave rise to liability on his part but was malicious or wanton as well. Only if it finds malicious or wanton conduct on the

[1] Parks v. Turner, 1851, 53 U.S. 39, 13 L.Ed. 883; Koon v. Insurance Co., 1881, 104 U.S. 106, 26 L.Ed. 670; Snyder v. United States 1884, 112 U.S. 216, 5 S. Ct. 118, 28 L.Ed. 697; Gay v. Joplin, C.C.E.D.Mo., 1882, 13 F. 650.

[2] Snyder v. United States, 1884, 112 U.S. 216, 217, 5 S.Ct. 118, 28 L.Ed. 697.

[3] Maisenbacker v. Society Concordia, 1899, 71 Conn. 369, 42 A. 67, 71 Am.St. Rep. 213; Doroszka v. Lavine, 1930, 111 Conn. 575, 150 A. 692, 69 A.L.R. 1279.

[4] Hanna v. Sweeney, 1906, 78 Conn. 492, 62 A. 785, 4 L.R.A.,N.S., 907; Hull v. Douglass, 1906, 79 Conn. 266, 64 A. 351.

[5] St. Peter's Church v. Bearch, 1857, 26 Conn. 355; Dalton v. Beers, 1871, 38 Conn. 529; Mason v. Hawes, 1884, 52 Conn. 12, 52 Am.St.Rep. 552; Gibney v. Lewis, 1896, 68 Conn. 392, 36 A. 799.

[6] Bennett v. Gibson, 1887, 55 Conn. 450, 12 A. 99; Shupack v. Gordon, 1906, 79 Conn. 298, 64 A. 740; Malley v. Lane, 1921, 97 Conn. 133, 115 A. 674.

[7] Craney v. Donovan, 1920, 95 Conn. 482, 111 A. 796; Amellin v. Leone, 1932, 114 Conn. 478, 159 A. 293.

part of the defendant may it, in addition to the ordinary compensatory damages, award damages to compensate for the plaintiff's otherwise unrecoverable expenses of litigation. Furthermore, if in an appropriate case the jury determines to award such damages the only limitation which the Connecticut law places upon the amount awarded is that it shall not exceed the amount of the plaintiff's expenses of litigation less his taxable costs.[8] Within that limit, therefore, the amount of the award is for the jury to determine in its discretion. In making such a determination it is obvious that the gravity of the defendant's malicious or wanton conduct is a most important element to be considered.

■ It is apparent, therefore, that the determination of the amount of punitive damages, if any, to be awarded under the Connecticut law cannot appropriately take place except in connection with the consideration by the jury of the whole question of the defendant's liability and of all the circumstances which it is asserted give rise to that liability. It would, therefore, be inappropriate for us under these circumstances to direct what under other circumstances we might well be inclined to order, namely, a new trial of the issue of damages only. Gasoline Prods. Co. v. Champlin Refining Co., 1931, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188. But since this cause has already been twice tried and twice appealed we think it right to give the plaintiff an opportunity to elect between a new trial of the action as a whole and the retention of the unobjectionable portion of the judgment.[9]

We will, therefore, withhold the entry of judgment for fifteen days within which time the plaintiff may, if it so elects, file in the office of the clerk of the district court a remittitur of the punitive damages which have been separately included in the amended verdict and judgment, and file a certified copy thereof in the office of the clerk of this court. If such a remittitur is filed the judgment, less the amount so relinquished, will be affirmed, otherwise the judgment will be reversed and a new trial ordered.

---

[8] Hanna v. Sweeney, 1906, 78 Conn. 492, 62 A. 785, 4 L.R.A.,N.S., 907; Tedesco v. Maryland Casualty Co., 1941, 127 Conn. 533, 18 A.2d 357, 132 A.L.R. 1259.

[9] Compare Washington & Georgetown R. Co. v. Harmon, 1892, 147 U.S. 571, 590, 13 S.Ct. 557, 37 L.Ed. 284; Becker Bros. v. United States, 2 Cir., 1925, 7 F.2d 3, 9; American Oil Co. v. Colonial Oil Co., 4 Cir., 1942, 130 F.2d 72, 78, certiorari denied 317 U.S. 679, 63 S.Ct. 159.