Frank J. MARCONE

v.

**PENTHOUSE INTERNATIONAL, LTD.**

**Civ. A. No. 78–3733.**

United States District Court,
E.D. Pennsylvania.

Nov. 17, 1983.

On Motion for Reconsideration
Dec. 14, 1983.

---

John A. Luchsinger, Media, Pa., for plaintiff.

Norman Ray Grutman, Jeffrey H. Daichman, New York City, Gregory S. Rubin, Philadelphia, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

A jury has awarded compensatory damages of $30,000 and punitive damages of $537,500 to the plaintiff, Frank J. Marcone, and against the defendant, Penthouse International, Ltd., in this diversity defamation action. In an earlier opinion, 533 F.Supp. 353 (E.D.Pa.1982), this Court ruled that the plaintiff was not a public figure for the purposes of this action, and that the relevant Constitutional limitations on the Pennsylvania law of defamation were those imposed by *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). The Court also predicted that the Supreme Court of Pennsylvania would retreat from its holding in *Matus v. Triangle Publications, Inc.*, 445 Pa. 384, 286 A.2d 357 (1971), *cert. denied*, 408 U.S. 930, 92 S.Ct. 2494, 33 L.Ed.2d 343 (1972) and allow a private figure defamation plaintiff to establish liability under Pennsylvania law based upon a showing of negligence. *See Bufalino v. Associated Press*, 692 F.2d 266, 274 (2d Cir.1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 2463, 77 L.Ed.2d 1340 (1983).

The jury found that the plaintiff had been defamed by an article in the November, 1978 issue of the defendant's publication "Penthouse, The International Magazine for Men". The article, authored by Edward Rasen, who was named as a defendant but never served in this action, was entitled "The Stoning of America." The article discussed the distribution and sale of marijuana to American markets.

Its basic thrust was that the typical new drug businessman is an attorney for whom there is no meaningful deterrent to drug trafficking because federal judges do not sentence attorney criminals to prison. The plaintiff was listed as an example of an "attorney criminal," who "contributed down payments of up to $25,000 on grass transactions." The article stated that "charges against him were dismissed because he cooperated with further investigations." The jury found that the plaintiff had proved by a preponderance of the evidence that the defamatory portions of the article were untrue, and were published by the defendant either with knowledge of their falsity or with reckless disregard as to whether they were true or false. The jury had been instructed that an award of punitive damages also required a finding that the defendant's conduct was outrageous. (Charge 37, 38).

The defendant has moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. The primary grounds advanced in support of the motion are: (a) the Court erred in charging the jury that an award of punitive damages required that the plaintiff prove knowledge of falsity or reckless disregard for truth or falsity by a preponderance of the evidence, the correct burden of proof being "clear and convincing" evidence; (b) the plaintiff failed to provide sufficient evidence of knowledge of falsity or reckless disregard for the truth to support the jury's award of punitive damages; (c) the plaintiff failed to prove that the article was false; (d) the plaintiff failed to present competent evidence of special harm or other actual injury resulting from the libel; and (e) the amount of the punitive damages awarded was so excessive as to indicate passion and prejudice and was disproportionate to the award of compensatory damages. For the reasons which follow, the defendant's motion for judgment notwithstanding the verdict will be denied, and the motion for a new trial will be denied, conditioned upon the plaintiff's acceptance of a reduction of the punitive damage award to $200,000.

Motions for a new trial require the exercise of discretion by the Court whose "duty is essentially to see that there is no miscarriage of justice." 6A *Moore's Federal Practice* ¶ 59.08[5], at 59–160 (footnote omitted) (2d ed. 1974); *Thomas v. E.J. Korvette, Inc.*, 476 F.2d 471, 474–75 (3d Cir.1973). The jury's verdict may be set aside only if manifest injustice will result. if it were allowed to stand. The Court may not substitute its own judgment for that of the jury merely because the Court may have reached a different conclusion. To grant a motion for judgment n.o.v., the Court must find as a matter of law that the plaintiff failed to adduce sufficient facts to justify the verdict. *Neville Chemical Co. v. Union Carbide Corp.*, 422 F.2d 1205, 1210 (3d Cir.), *cert. denied*, 400 U.S. 826, 91 S.Ct. 51, 27 L.Ed.2d 55 (1970). Such a motion "may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment." 5A *Moore's, supra*, ¶ 50.07[2], at 50–77 (footnote omitted); *Korvette, supra*, at 474. *Douglas W. Randall, Inc. v. AFA Protective Systems, Inc.*, 516 F.Supp. 1122, 1124 (E.D.Pa.1981), *aff'd* 688 F.2d 820 (3d Cir. 1982). In the present case, the Court finds that the jury verdict is supported by the evidence and that the evidence is more than sufficient to meet the applicable Constitutionally-imposed standards. In addition, the Court does not believe that any trial errors exist which warrant the granting of a new trial and that no manifest injustice will result if the jury verdict is allowed to stand, so long as the amount of the punitive damages award is reduced to $200,000.

## A. STANDARD OF PROOF OF ACTUAL MALICE

■■ The most troublesome contention raised by the defendant is that the Court erred in giving the jury the following interrogatory with respect to punitive damages:

Do you find that the plaintiff proved by a preponderance of the evidence that the portions of the article which were defamatory of the plaintiff and untrue were

published by the defendant either with knowledge of their falsity or with reckless disregard as to whether they were true or false?

The error, according to the defendant, was in charging that this finding must be made by a preponderance of the evidence rather than by clear and convincing evidence. The defendant contends that this error requires a new trial. To succeed in this contention the defendant must show that the standard of the Court's instruction was erroneous, and that the failure to instruct as to the correct standard requires a new trial. As set forth below, the Court does not believe that it instructed the jury improperly, although the question is not free from doubt. However, even if the standard of the Court's instruction were incorrect, the error would not require a new trial, since under Pennsylvania law and under the relevant holdings of the Supreme Court the findings required to satisfy Constitutional standards may be made by this Court. The Court finds that the plaintiff has demonstrated that the defendant published the material defamatory of him with knowledge of falsity or reckless disregard of its truth or falsity, and the Court finds that this has been proven by clear and convincing evidence as well as by a preponderance of the evidence. A proper Constitutional basis therefore exists for the jury's award of punitive damages in this case.

■■■ As the Third Circuit as stated "[a]djudication of a defamation case under Pennsylvania law involves two principal inquiries: (1) whether the defendants have harmed the plaintiff's reputation within the meaning of state law; and (2) if so, whether the First Amendment nevertheless precludes recovery." *Steaks Unlimited, Inc. v. Deaner*, 623 F.2d 264, 270 (3d Cir.1980). If the plaintiff is a private figure, "the First Amendment forbids states to impose liability without fault, but otherwise permits them to 'define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual.'" 623 F.2d at 272 (quoting *Gertz v. Robert*

*Welch, Inc.*, 418 U.S. 323, 347, 94 S.Ct. 2997, 3010, 41 L.Ed.2d 789 (1974)). As stated above, this Court has determined that Pennsylvania would allow a private figure to establish liability upon a showing of negligence, and this standard of liability is within the Constitutional requirements of *Gertz*.

■■■ Determination of damages in defamation actions, like determination of liability, follows the same two-step inquiry: the requirements of state law must be met, and the restrictions on the state law cause of action imposed by the Constitution must not be violated. Again, within the limitations imposed by *Gertz* a state is free to define the relevant standards of proof. *Dixson v. Newsweek, Inc.*, 562 F.2d 626, 629 (10th Cir.1977); *Pirre v. Printing Developments, Inc.*, 468 F.Supp. 1028, 1043 (S.D.N.Y.) *aff'd mem.* 614 F.2d 1290 (2d Cir.1379). In this diversity case governed by Pennsylvania law, the Court, as stated at trial, must "apply the Pennsylvania law as to punitive damages except insofar as the Pennsylvania law as to punitive damages may have been limited by the *Gertz* language." (N.T. 7.185).

The law in Pennsylvania is clear on the circumstances in which an award of punitive damages is permitted. "Punitive damages are damages, other than compensation, or nominal damages, awarded against a person to punish him for his outrageous conduct." *Chambers v. Montgomery*, 411 Pa. 339, 344, 192 A.2d 355, 358 (1963), quoting Restatement of Torts, § 908(1). *See also, Focht v. Rabada*, 217 Pa.Super. 35, 268 A.2d 157 (1970); *Chuy v. Phila Eagles Football Club*, 595 F.2d 1265 (3d Cir.1979); *Thomas v. American Cystoscope Makers, Inc.*, 414 F.Supp. 255 (E.D.Pa.1976). "Punitive damages are awarded only for outrageous conduct, ... for acts done with a bad motive or with a reckless indifference to the interests of others." *Chambers, supra*, quoting Restatement of Torts, § 908(1), comment (b).

*Aetna Life and Casualty Co. v. McCabe,* 556 F.Supp. 1342, 1356 (E.D.Pa.1983). Accordingly, the jury was instructed that to find punitive damages it must find that the conduct of the plaintiff was outrageous. (Charge 37, 38).

■ *Gertz* imposes Constitutional limitations on the recovery of damages by private individuals in defamation actions. The Supreme Court imposed these limitations to insure that excessive and unpredictable damage awards do not serve to "punish unpopular opinion rather than to compensate individuals for injury sustained by publication of a false fact," and do not "unnecessarily exacerbate[ ] the danger of media self-censorship." 418 U.S. at 349–50, 94 S.Ct. at 3012. With respect to compensatory damages the Supreme Court stated:

> It is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury. We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.

*Id.* Compensatory damages are thus limited to compensation for actual injury, proven by competent evidence, although what constitutes actual injury is broadly defined.

The standard of the Constitutional limitation on the award of punitive damages is stated in two places in *Gertz*. The Court states its holding as follows: "we hold that the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth." 418 U.S. at 349, 94 S.Ct. at 3011. After a discussion of the dangers of punitive damage awards in defamation actions against media defendants, the Court summarizes its holding: "In short, the private defamation plaintiff who establishes liability under a less demanding standard than that stated by [*New York Times v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)] may recover only such damages as are sufficient to compensate him for actual injury." 418 U.S. at 350, 94 S.Ct. at 3012.

■ The *New York Times* standard requires defamation plaintiffs who are public figures or public officials to prove "actual malice", that is, knowing falsity or reckless disregard of the truth or falsity of the defamatory statement, to establish liability. 376 U.S. at 280, 84 S.Ct. at 726. The standard has been further defined in a series of Supreme Court cases.

Recklessness means that the publisher "in fact entertained serious doubts as to the truth of his publication," *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 1325, 20 L.Ed.2d 262 (1968), or had a "subjective awareness of probable falsity." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 335 n. 6, 94 S.Ct. 2997, 3005 n. 6, 41 L.Ed.2d 789 (1974). This standard makes it "essential to proving liability that the plaintiff focus on the conduct and state of mind of the defendant." *Herbert v. Lando,* 441 U.S. 153, 160, 99 S.Ct. 1635, 1640, 60 L.Ed.2d 115 (1979). Although a publisher does not have an absolute duty to investigate, *St. Amant v. Thompson,* 390 U.S. 727, 733, 88 S.Ct. 1323, 1326, 20 L.Ed.2d 262 (1968), a publisher cannot feign ignorance or profess good faith when there are clear indications present which bring into question the truth or falsity of defamatory statements.

*Gertz v. Robert Welch, Inc. (Gertz II),* 680 F.2d 527, 538 (7th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1233, 75 L.Ed.2d 467 (1983).

■ Although the Supreme Court's opinion in *Gertz* clearly adopts the standard of conduct set forth in *New York Times v. Sullivan* as a predicate to the award of punitive damages in a private figure defamation case, *Gertz* does not explicitly state what standard of proof should be applied. In public figure cases, actual malice, or *"Times* malice," must be shown by clear and convincing evidence before liability may be imposed. *Gertz*, 418 U.S. at 342, 94 S.Ct. at 3008; *Steaks Unlimited,* 632 F.2d at 275. No Third Circuit or Supreme Court case since *Gertz* has spoken to the question of what standard should be applied to punitive damages recoveries by private figures. Furthermore, the Court has found no Pennsylvania case holding that clear and convincing proof is required under state law before punitive damages may be awarded, and we predict that if faced with the question whether a higher standard should be applicable in defamation cases the Pennsylvania Supreme Court would adhere to a preponderance standard. Authority from other jurisdictions bearing directly and explicitly on the question of what standard of proof is required by *Gertz* is surprisingly sparse and seems to weigh in favor of a preponderance standard. *Compare Rimmer v. Colt Industries Operating Corp.,* 656 F.2d 323, 331 (8th Cir.1981) (Bright, J., concurring) (preponderance standard); *Pirre v. Printing Developments, Inc.,* 468 F.Supp. at 1040, 1043 (same); *Miller v. Lear Siegler, Inc.,* 525 F.Supp. 46, 62 (D.Kan.1981) (same) *with General Products Co. v. Meredith Corp.,* 526 F.Supp. 546, 552 (E.D.Va.1981) (clear and convincing standard); *Fitzgerald v. Penthouse Int'l, Ltd.,* 525 F.Supp. 585, 597 (D.Md.1981) (same), *rev'd* 691 F.2d 666 (4th Cir.1982) (appeals court did not reach burden of proof issue in deciding that a genuine issue of material fact existed as to actual malice), *cert. denied,* —— U.S. ——, 103 S.Ct. 1277, 75 L.Ed.2d 497 (1983). Several courts have also stated that a showing of actual malice is required before punitive damages may be awarded to a private figure plaintiff, without stating explicitly the standard of proof to be applied. *Golden*

*Bear Distributing Systems v. Chase Revel, Inc.,* 708 F.2d 944, 947 (5th Cir.1983) (implying that the standard is the same as that needed to establish liability by a public figure); *Wilson v. Scripps-Howard Broadcasting Co.,* 642 F.2d 371, 375 n. 1 (6th Cir.), *cert. granted,* 454 U.S. 962, 102 S.Ct. 500, 70 L.Ed.2d 377, *appeal dismissed* 454 U.S. 1130, 102 S.Ct. 984, 71 L.Ed.2d 119 (1981); *Littlefield v. Fort Dodge Messenger,* 614 F.2d 581, 584 (8th Cir.), *cert. denied,* 445 U.S. 945, 100 S.Ct. 1342, 63 L.Ed.2d 779 (1980); *Jenoff v. Hearst Corp.,* 453 F.Supp. 541 (D.Md.1978), *aff'd* 644 F.2d 1004 (4th Cir.1981) (implying the standards are the same); *Handleman v. Hustler Magazine, Inc.,* 469 F.Supp. 1053, 1059 n. 11 (S.D.N.Y.1979).

■ It might well be contended that uniformity in the application of the actual malice standard could be furthered by imposing the clear and convincing standard on private figures seeking to recover punitive damages, just as it is imposed on public figures seeking to establish liability. In addition, the Supreme Court has noted that the "strong and legitimate state interest in compensating private individuals for injury to reputation ... extends no further than compensation for actual injury," *Gertz,* 418 U.S. at 348–49, 94 S.Ct. at 3011; this lessened state interest with respect to punitive damages may allow the imposition of a higher standard of proof to protect First Amendment values. *See also Acosta v. Honda Motor Co., Ltd.,* 717 F.2d 828, 839 (3d Cir.1983) (imposing clear and convincing standard to recover punitive damages in a strict liability action under Virgin Islands law; consequences require "particularly careful scrutiny"). On the other hand, requiring a plaintiff to prove actual malice in itself represents a significant accommodation of the state's interest in punishing and deterring wrongful conduct to First Amendment values, even if a preponderance standard is applied. In addition, the full measure of protection given the media in public figure cases may not be necessary when the state imposes restrictions on the

amount of punitive damages, so that the dangers of the wholly uncontrolled and unpredictable awards cited by the Supreme Court are not present. *See Pirre*, 468 F.Supp. at 1040. As will be discussed below, under Pennsylvania law punitive damages must be reduced by the Court when they are so grossly excessive as to offend the Court's sense of justice.

 While the Court continues to believe it was correct in charging on a preponderance of the evidence standard, this question need not be decided to dispose of the present case because the Court finds that the plaintiff has proved, by clear and convincing evidence, that the defendant acted with reckless disregard of the truth or falsity of the defamatory statements it published concerning the plaintiff. While *Gertz* sets forth the burdens which the Constitution places on a private individual seeking to recover damages in a defamation action, *Gertz* does not require that a jury find that the plaintiff has made the Constitutionally-required showings. In *Time, Inc. v. Firestone*, 424 U.S. 448, 96 S.Ct. 958, 47 L.Ed.2d 154 (1976), the Supreme Court was faced with a case involving a private individual in which no question of fault had been submitted to the jury. The Court stated:

The failure to submit the question of fault to the jury does not of itself establish noncompliance with the constitutional requirements established in *Gertz*, however. Nothing in the Constitution requires that assessment of fault in a civil case tried in a state court be made by a jury, nor is there any prohibition against such a finding being made in the first instance by an appellate, rather than a trial, court. The First and Fourteenth Amendments do not impose upon the States any limitations as to how, within their own judicial systems, factfinding tasks shall be allocated. If we were satisfied that one of the Florida courts which considered this case had supportably ascertained petitioner was at fault, we would be required to affirm the judgment below.

424 U.S. at 461, 96 S.Ct. at 969. Although this discussion was dicta in light of the Court's ultimate determination that no adequate finding of fault had been made at any point, this Court is reluctant to reject reasoning set forth at such length in an opinion joined in by six Justices, particularly since this reasoning was not challenged in the concurring opinion or in either dissenting opinion. It thus appears that this Court should look to the law of Pennsylvania for guidance on the respective roles of Court and jury in determining whether Constitutional requirements have been met in a defamation action. The Supreme Court of Pennsylvania has squarely addressed this question in a public figure case, stating as follows:

We do not agree, however, that the jury must be instructed that a public-figure plaintiff must prove "actual malice" by "clear and convincing" evidence rather than by a preponderance of the evidence. The United States Supreme Court said in *New York Times Co. v. Sullivan, supra*, 376 U.S. at 285–286, 84 S.Ct. at 729: "Applying these standards, we consider that the proof presented to show actual malice lacks the *convincing clarity* which the constitutional standard demands, and hence that it would not constitutionally sustain the judgment for respondent under the *proper rule of law*." (Emphasis added). While the existence or absence of actual malice is a question of fact for the jury, whether there is sufficient evidence in the case to warrant such a finding by the jury is a question of law for the court and is reviewable on appeal. *See New York Times Co. v. Sullivan, supra*, n. 26 at 285, 84 S.Ct. at 728. Thus the United States Supreme Court has said: "This Court's duty is not limited to the elaboration of constitutional principles; we must also in proper cases review the evidence to make certain that those principles have been constitutionally applied. * * We must 'make an independent examination of the whole record,' * * * so as to assure ourselves that the judgment does not constitute a forbidden intrusion on

the field of free expression." *New York Times Co. v. Sullivan, supra,* at 285, 84 S.Ct. at 729. Therefore, in these statements, we believe that the United States Supreme Court was not addressing itself to the degree of proof with which the plaintiff must convince the jury but to the standard by which the court must review the evidence adduced to determine its sufficiency to warrant submission of the case to the jury without impairing defendant's constitutional rights. *Contra, Goldwater v. Ginsburg* [414 F.2d 324 (2 Cir.1969) ], *supra.*

*Corabi v. Curtis Publishing Company,* 441 Pa. 432, 456-57, 273 A.2d 899, 911–12 (1971) (footnote omitted) *Corabi* makes clear that under Pennsylvania law the Court may make the finding that the Constitutionally-imposed requirements of *Gertz* have been met. *Time v. Firestone* makes clear that such a procedure does not violate the Constitution. This Court, sitting in diversity, is required to apply Pennsylvania substantive law in this case. The right the defendant claims—the right to a new trial because the question whether the plaintiff has proved actual malice with convincing clarity was not presented to the jury—is quite simply a substantive right to which the defendant is not entitled under Pennsylvania law or the federal Constitution. Accordingly, this Court's finding that the plaintiff has proved actual malice by clear and convincing evidence requires that we affirm the jury's finding that a sufficient predicate for an award of punitive damages has been shown in this case. *See Curtis Publishing Co. v. Butts,* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (plurality opinion) (jury awards punitive damages based on state law definition of malice; Supreme Court finds that *New York Times* standard should have been applied, but determines that evidence is sufficient to meet the *Times* standard and affirms). *See also Bose Corp. v. Consumers Union of United States, Inc.,* 692 F.2d 189, 195 (1st Cir.1982), *cert. granted,* —— U.S. ——, 103 S.Ct. 1872, 76 L.Ed.2d 805 (1983) (court must perform an independent *de novo* review of the record to ensure that the plaintiff has satisfied his burden of proving actual malice by clear and convincing evidence, citing cases and authorities). *Cf. Connick v. Myers,* —— U.S. ——, —— n. 7, 103 S.Ct. 1684, 1690 n. 7, 75 L.Ed.2d 708 (1983) ("The inquiry into the protected status of speech is one of law, not fact").

It is not the position of this Court that the issue of whether the plaintiff has met the Constitutionally-imposed standards in a defamation action should not be given to the jury. We hold only that neither Pennsylvania law nor the Constitution requires a new trial in circumstances such as those of the present case in which the jury has found actual malice by a preponderance of the evidence and the Court has found the evidence sufficient to meet the Constitutional standards.

## B. EVIDENCE OF ACTUAL MALICE

This Court must determine whether the plaintiff has sustained his burden of proving actual malice. We find that the plaintiff has met this burden both by a preponderance of the evidence and by clear and convincing evidence. As set out in this Court's earlier Memorandum, 533 F.Supp. at 355–56, the article at issue in this case began by describing a "new breed" of narcotics dealer, typically an attorney. The article then stated:

> However, even after DEA agents spent more than two years building an airtight case against a Mexican-American syndicate involved in the multi-million-dollar, nationwide wholesaling of marijuana, federal judges did not sentence any of the attorney criminals to prison.
>
> Examples: ...
>
> Frank Marcone, an attorney from the Philadelphia area, contributed down payments of up to $25,000 on grass transactions. Charges against him were dismissed because he cooperated with further investigations....

The defendant's contention that the plaintiff failed to meet his burden of proving the falsity of the statements concerning him in the article borders on the frivo-

lous. The plaintiff testified that he did not give any money for use in the purchase of drugs, did not cooperate with federal authorities, and had no reason to. (Marcone direct 20, 46, N.T. 3.25, 4.69–70). Although the plaintiff was indicted in federal court in Detroit for allegedly making a $25,000 drug payment, he provided a copy of a court record showing that this indictment was voluntarily dismissed. (P–5). The Assistant United States Attorney assigned to determine if the plaintiff should be re-indicted in Philadelphia testified that the United States Attorney's office in this district determined that there was not sufficient evidence to warrant prosecution and no further action was taken against the plaintiff. (N.T. 5.10–11). The Assistant United States Attorney also stated that he was unaware of any cooperation by the plaintiff with federal authorities and that he knew of no basis for a statement that the charges were dismissed in Detroit in return for the plaintiff's cooperation. (N.T. 5.11, 5.26).

The evidence at trial showed that the following persons had some involvement with the defamatory article before publication: Ed Rasen, the author, Susan Bidel, a "senior research person" (N.T. 5.54) employed by Penthouse, who verified factual data in the article, John Lombardi, a Penthouse editor who edited the piece, James Goode, Penthouse's editorial director who assisted in the editing and authorized publication, and Gerald Adler, Penthouse's general counsel, who also reviewed the article and authorized publication. (N.T. 2.25–26, 5.51–52, 5.89, 7.88). Messrs. Adler and Rasen and Ms. Bidel did not testify in this action. The deposition testimony of Messrs. Lombardi and Goode was provided, as was in-court testimony from Peter Block, a Penthouse editor who had no direct involvement with the story, and Clark Mollenhoff, a syndicated columnist, investigative reporter, and professor of journalism who was called by the defendant as an expert witness.

A copy of a draft of the article was entered into evidence (P–2). This draft was used by the researcher, Ms. Bidel, who attached a short memo to the front of the draft informing Mr. Lombardi, the editor, that she had "underlined all the verified data, names, etc. and [had] gone over the material with Gerry Adler." Ms. Bidel's underlining of such verified data on a draft was standard procedure at Penthouse at the time this article was published. (N.T. 4.92, 5.60–62, 7.89–92). The draft was the "final edited version", approved by Mr. Goode, the editorial director, "prior to checking." (N.T. 5.59). In this draft, none of the references to "attorney criminals" is underlined, nor is the statement that DEA agents built an airtight case against a Mexican-American drug syndicate but none of the "attorney criminals" went to prison. The direct reference to the plaintiff appears as follows: *"Frank Marcone, an attorney from the Philadelphia area, contributed down payments up to $25,000 toward shipments. Charges were dismissed in favor of another indictment."* (P–2 at 8). An asterisk appears next to the line containing the plaintiff's name; Mr. Block testified that this indicated that Ms. Bidel was working to obtain more information concerning the plaintiff. (N.T. 7.101). The Penthouse employees reviewing the draft thus had reason to know, in accordance with Penthouse's standard procedures, that despite Ms. Bidel's research efforts on this article, she had been unable to verify any of the defamatory statements ultimately published about the plaintiff, and that more information concerning the statements was needed before publication. In addition, the evidence shows that the statement in the published article that the plaintiff cooperated with the Government, resulting in the dismissal of the charges against him, was not included in either of the drafts submitted into evidence. Neither Mr. Goode nor Mr. Lombardi knew how, when, where, or by whom this additional statement was added. (N.T. 5.59, 5.105).

The evidence shows that Penthouse had verified the information that the charges against the plaintiff were dismissed in favor of another indictment, yet the final published article stated positively that the

plaintiff had committed the act for which he was charged. The added reference to cooperation, which does not appear in either of the drafts submitted into evidence, clearly conveys the message to a reasonable reader that the plaintiff was an "attorney criminal" who contributed $25,000 to a drug transaction, and that charges against him were dismissed solely because of his cooperation and *not* because he was innocent of the charges. Mr. Goode and Mr. Lombardi stated that they had reason to believe the veracity of Mr. Rasen's information because of their previous experience with him and because of his reputation and background. However, both admitted that they were unaware that Mr. Rasen was named as a co-defendant in the indictment which named the plaintiff. Furthermore, neither of the drafts presented in evidence at trial contains the statement that charges were dismissed because of the plaintiff's cooperation. It became clear at trial that this statement was added to the author's material by one of the editors late in the editorial process; the editors' statements that they trusted Mr. Rasen are thus irrelevant with respect to this statement. The inference that the statement was added by one of the editors is strengthened by the fact that a list of corrections to the draft submitted by Mr. Rasen does not refer to any cooperation by the plaintiff or mention the plaintiff in any way. (P–2).

According to the evidence, the defendant relied on three sources in publishing the defamatory statements concerning the plaintiff: (1) Mr. Rasen's notes, (2) an article in the March 18, 1976 issue of the *Philadelphia Inquirer,* Vol. 294, No. 78, at 1–A and 9–A, entitled "Delco Castle Linked To Largest U.S. Drug Case," and (3) the report of a hearing before a Senate Subcommittee on illicit Mexican-American drug traffic, *Illicit Traffic in Weapons and Drugs Across the United States-Mexican Border: Hearing Before the Permanent Subcomm. on Investigations of the Senate Comm. on Gov't Operations,* 94th Cong., 1st Sess. at 24 (1977). Mr. Rasen's notes were not produced at trial and Mr. Lombardi, the editor of the article, had no

recollection as to what Mr. Rasen's notes contained concerning the plaintiff. (N.T. 5.97). The other two sources cited provide no basis for the defamatory statements, and indeed show that the defendant had reason to know that those statements were false.

The *Inquirer* article referred to the indictment and set forth the charges against the plaintiff. It also stated that the plaintiff and three other Philadelphia-area men named in the indictment frequented "the Castle", a building in Delaware County, and that the plaintiff was a "close associate" of the Castle's owner. The Castle was stated to have been the subject of a number of law enforcement investigations, including one into the disappearances of five women, four of whom were found murdered. The article stated that several persons linked to the Castle had been arrested in the past on drug charges, but that federal authorities had no information that the drugs mentioned in the indictment went to the Castle. Finally, the article stated that the plaintiff "was once quoted" as saying that he occasionally went on weekend trips with a motorcycle gang known as the Warlocks, and stated that he had frequently represented them in legal proceedings.

▮▮▮ The *Inquirer* article said nothing about the plaintiff's guilt with respect to the charges in the Detroit indictment and of course said nothing about any cooperation by him with federal authorities. The article stated only that the defendant had been indicted in connection with a drug transaction. An indictment affords no inference of guilt, nor does it affect the presumption given every citizen under our Constitution that he is innocent of charges brought against him until such time, if ever, that his guilt is proved beyond a reasonable doubt. The law is clear that a report that a person has been indicted or otherwise charged with an offense may not state that the accused committed the crime, or comment upon or infer his probable guilt. *See Cianci v. New Times Publishing Co.,* 639 F.2d 54 (2d Cir.1980); *Commercial Publishing Co. v. Smith,* 149 F.

704, 706 (6th Cir.1907); *Piracci v. Hearst Corp.*, 263 F.Supp. 511, 514 (D.Md.1966), aff'd 371 F.2d 1016 (4th Cir.1967). The *Inquirer* article thus provides no justification for the publication of those statements found to have defamed the plaintiff by referring to him as an attorney criminal who financed a drug transaction and avoided jail by cooperating with federal authorities.

The information in the Senate report upon which the defendant claimed reliance was supplied to a Senate Subcommittee by the Drug Enforcement Administration. The Senate report listed the disposition of drug conspiracy charges against a number of persons. The portion of this report upon which the defendant claimed reliance reads as follows:

Defendant: Frederick Frey (Class III).
Maximum sentence: 5 years.
Actual sentence: 1 year suspended sentence; 2 years special parole.
Defendant: Richard Litner (Class III).
Maximum sentence: 5 years.
Actual sentence: 1 year probation.
Defendant: Richard S. MacKenzie (Class III).
Maximum sentence: 5 years.
Actual sentence: $1,000 fine.
Defendant: Samuel T. Arnold (Class III).
Maximum sentence: 5 years.
Actual sentence: To plead guilty in Rhode Island on misdemeanor under Rule 20.
Defendant: Charles S. Hewett (Class I).[1]
Maximum sentence: 5 years.
Actual sentence: Dismissed at request of Government due to cooperation.
Defendant: Blanca Reid (Class III).
Maximum sentence: 5 years.
Actual sentence: Dismissed in interest of Justice.
Defendant: Frank Marcone (Class III).
Maximum sentence: 5 years.
Actual sentence: Dismissed (to be reindicted in Philadelphia).
Defendant: Michael Hearn (Class III).
Maximum sentence: 5 years.
Actual sentence: Dismissed (to be reindicted in Philadelphia).

---

[1] Defendants sentence reduced at the request of the U.S. Attorney's Office due to cooperation.

---

Hearing Report at 24. The Report states that as to the plaintiff charges were dismissed "to be reindicted in Philadelphia." Footnote one, referring to cooperation, is clearly applicable only to Charles S. Hewett; the Court does not believe that anyone could read this footnote as referring to the plaintiff.

None of the three bases relied on by the defendant in publishing the statements concerning the plaintiff, and presented to the jury as proving the truth of those statements (opening statements at 31–32), provided the jury, or Penthouse, any basis whatsoever for finding that the statements were in fact true. To the contrary, the evidence gave a clear indication that there was no basis whatsoever for making the false statements. Publishing the defamatory statements with such a clear indication of falsity, under the circumstances presented to the jury, clearly and convincingly shows actual malice as that term has been defined in *New York Times* and its progeny.

The defendant contends in its post-trial memorandum, at 43–44, that "[i]f a footnote in the Congressional report was misread by the checker, editor, or even the attorney, and the statement in Rasen's draft changed out of a desire to insure total accuracy, that was at worst a mistake

due to carelessness or negligence," and does not show actual malice or outrageous conduct. The problem with this argument is that there is no evidence in the record that the change was due to an innocent mistake. On the contrary, the evidence in this case convincingly supports a finding that the change was consciously made by someone on the editorial staff of Penthouse for the purpose of supporting the article's contention that there are "attorney criminals" involved in drug transactions who are not sent to prison by federal judges.

Finally, the Court should note that it found the opinion testimony of Professor Mollenhoff, the defendant's expert witness, unpersuasive; so, too, apparently, did the jury. Professor Mollenhoff stated his opinion that the defendant's conduct was "quite responsible." (N.T. 7.162). Professor Mollenhoff placed great weight on the defendant's supposed reliance on a Senate report (N.T. 7.132, 7.163) without any apparent awareness that the Senate report in this case did not support the statements made concerning the plaintiff. Professor Mollenhoff also stated that checking the indictment itself is desirable but may not be possible for a publisher under a deadline; he then admitted that he did not know what time constraints Penthouse might have been under in this particular case. (N.T. 7.167–68).

Professor Mollenhoff did state that an investigative reporter must have a knowledge of public records and that magazine publishers should make sure that there are "public records to support the major thrust of material." (N.T. 7.131–32). Similarly, Mr. Goode testified in his deposition that a researcher has a "total obligation" to verify factual matter "by all available printed sources." (N.T. 4.94, 5.62). These standards were ignored in this case.

▪ Publication of the defamatory material in this case, with no apparent basis for it, and in light of the fact that the defendant had information of which it was aware which cast serious doubt on its accuracy, clearly and convincingly demonstrates reckless disregard for the truth or falsity of the statements and supports the jury's finding that this conduct was outrageous. This is not a case where an editor or publisher simply relied on the statement of a credible author without checking that information; rather, the defendant had absolutely no reason to believe that the defamatory information which did not come from the author was true, and, because the dismissal of the indictment in favor of another indictment had been verified, had reason to believe the defamatory statements were false. Accordingly, this Court finds, as did the jury, that the plaintiff made a showing sufficient to support an award of punitive damages. See Davis v. Schuchat, 510 F.2d 731, 735–36 (D.C.Cir.1975) (actual malice found where the defendant claimed that his knowledge that the appellant and other officials had been indicted for perjury and fraud allowed him to form a good faith belief that they had been convicted of some crime); Corabi v. Curtis Publishing Co., 441 Pa. at 466, 273 A.2d at 916 (conscious editing decisions to comport with desired tone of a magazine help support a finding of actual malice).

## C. EVIDENCE OF ACTUAL INJURY

The defendant contends that no competent evidence was presented to support the jury's award of compensatory damages and that this award must be stricken. This contention is without merit. The Court believes that the plaintiff did present evidence of actual injury and that this evidence was sufficient to support the jury's award of compensatory damages in the amount of $30,000.

▪ Under Pennsylvania law, a defamation plaintiff may recover damages for injury to reputation, for any special harm he may have suffered, and for emotional distress or bodily harm. Corabi v. Curtis Publishing Co., 441 Pa. at 473, 273 A.2d at 919–20; Montgomery v. Dennison, 363 Pa. 255, 267–68, 69 A.2d 520, 527 (1949) (citing Restatement of Torts §§ 621–623). Gertz, as stated above, requires that compensatory awards be supported by competent evidence of actual injury.

The plaintiff testified that he was frustrated, distraught, upset, and distressed about the article and its effect on his family and friends, in that it revived the charges which he thought had been laid to rest two years previously and made him appear untruthful in professing his innocence of those charges. He also testified that he feared retribution against his family by clients who imagined themselves the victims of his alleged cooperation. (Marcone direct 49–61). This Court is not free to overturn the jury's apparent finding that this testimony was credible, regardless of the alleged inconsistencies in other matters of the plaintiff's testimony to which the defendant has pointed us. Credibility questions are for the jury. The plaintiff's testimony was buttressed by that of several witnesses who were acquainted with him at the time of the publication and who testified that he appeared upset by the article. (N.T. 6.70, 6.155, 6.165).

The plaintiff also presented testimony that he lost clients because of the article and other attorneys testified that they received clients who, as a result of the article, were concerned about being represented by the plaintiff. This testimony was admissible to show damage to the plaintiff's business reputation and its resulting effect on the plaintiff. *See Meehan v. Snow,* 494 F.Supp. 690, 696 (S.D.N.Y. 1980), *rev'd on other grounds,* 652 F.2d 274 (2d Cir.1981). Witnesses also testified that the article affected their view of the plaintiff's reputation. (N.T. 6.96, 6.108, 6.158). The defendant presented a great deal of evidence in an attempt to show that the plaintiff's reputation was so poor that it could not have been damaged further by the defamatory article. This included evidence that the indictment had been widely reported, as had been the ties of the plaintiff to the "Castle" and to a motorcycle club reportedly involved in criminal activities. The defendant also presented reports that the plaintiff had been indicted for income tax evasion, the trial apparently ending in a hung jury (N.T. 3.147–51), reports that he was fined $200 for assault and battery on a police officer (N.T. 3.104–05),

and reports that he had been fined twice for contempt of court. (N.T. 3.134–43). The first contempt citation was in 1966. The second was late in 1979, after the publication of the article at issue in this case, and the judge who imposed the fine severely criticized the plaintiff, according to a newspaper account of the indictment.

The defendant claims that the effect of this material was to destroy the plaintiff's reputation so thoroughly that no further damage to his reputation was possible at the time of publication. *See Cardillo v. Doubleday & Co., Inc.,* 518 F.2d 638 (2d Cir.1974) (habitual criminal is "libel proof"); *Ray v. Time, Inc.,* 452 F.Supp. 618 (W.D. Tenn.1978) (convicted assassin of Martin Luther King is "libel proof"). Although the evidence provided by the defendant showed that the plaintiff's reputation in the community may have been less than unblemished, there is no question that the plaintiff's reputation could have suffered from a false charge that he participated in a drug conspiracy. Accordingly, the Court does not believe that the plaintiff should have been precluded as a matter of law from offering testimony that the article damaged his reputation. *See Buckley v. Littel,* 539 F.2d 882, 889 (2d Cir.1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977) (*Cardillo* "libel proof" doctrine is a narrow, limited one). *See also Wolston v. Readers Digest Assn., Inc.,* 443 U.S. 157, 169, 99 S.Ct. 2701, 2708, 61 L.Ed.2d 450 (1979) (Court refuses to "declare 'open season' for all who [seek] to defame persons convicted of a crime").

The defendant contends that the plaintiff failed to provide sufficient evidence that special harm resulted from the publication of the libel, and that this requires entry of judgment against the plaintiff. As the Court stated in its earlier Memorandum, 533 F.Supp. at 358, 361, the defamatory statements at issue impute to the plaintiff the commission of an indictable crime, and they are therefore actionable as libel *per se* and do not require proof of special harm, that is, harm of a pecuni-

**334**

ary nature. *See Paul v. Davis*, 424 U.S. 693, 697, 96 S.Ct. 1155, 1159, 47 L.Ed.2d 405 (1976) ("Imputing criminal behavior to an individual is generally considered defamatory *per se*, and actionable without proof of special damages."); *Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc.,* 367 F.2d 625, 628 (3d Cir.1966) (reserving the question whether all libels are actionable *per se* in Pennsylvania). *See also Brown & Williamson Tobacco Corp. v. Jacobson,* 713 F.2d 262, 267–68 (7th Cir. 1983) (noting two different meanings of libel *per se,* one referring to the need for extrinsic facts and the other assimilating the traditional categories of slander *per se;* Pennsylvania apparently adopts the latter approach).

*Gertz* does not require that a plaintiff prove special harm, that is, pecuniary loss, as the term has been defined in the Pennsylvania cases. Where liability is based solely on fault, *Gertz* requires proof by competent evidence of "actual injury", which includes "impairment of reputation in the community, personal humiliation, mental anguish and suffering." 418 U.S. at 349–50, 94 S.Ct. at 3012. *See Time, Inc. v. Firestone,* 424 U.S. at 459–60, 96 S.Ct. at 968 (affirming $100,000 award for the plaintiff's anxiety over defamatory article and her fear that it would adversely affect her young son; no claim for damage to reputation); *Gertz II,* 680 F.2d at 540 (affirming award of $100,000 for severe mental distress, anxiety, embarrassment, and injury to professional reputation). *Gertz* therefore does not eliminate the significance of classifying a libel as libel *per se. Wachs v. Winter,* 569 F.Supp. 1438, 1446 (E.D.N.Y.1983); R. Sack, Libel, Slander and Related Problems 110–111 (1980). If a libel is libel *per se,* a plaintiff must prove only actual injury as broadly defined by *Gertz;* he need not prove special harm. Although the jury was instructed in this case that the plaintiff was required to prove special harm, this error could not have prejudiced the defendant, since it merely imposed an unnecessary burden upon the plaintiff, particularly in light of the jury's finding of actual malice.

Finally, since in this case the plaintiff proved that the defendant published the defamatory material with actual malice, he was not prevented by the Supreme Court's *Gertz* decision from recovering "presumed damages", that is, damages awarded in the absence of proof of injury as compensation for the injury presumed to be the normal result of a defamatory publication. *Gertz II,* 680 F.2d at 540. Since Pennsylvania law appears to provide for the recovery of such "presumed damages," *Corabi,* 441 Pa. at 473, 273 A.2d at 919–20; *Montgomery,* 363 Pa. at 267–68, 69 A.2d at 527, the finding of actual malice in this case appears to have absolved the plaintiff of the requirement that he have presented proof of actual injury. A finding that the plaintiff was entitled to "presumed damages" is not necessary to support the jury's award of compensatory damages, however, since, as stated above, the plaintiff provided sufficient competent evidence to support that award.

### D. AMOUNT OF THE PUNITIVE DAMAGES AWARD

The defendant contends that the punitive damages award in this case of $537,500, almost eighteen times the compensatory damage award, is excessive because it bears no reasonable relationship to the compensatory damages awarded and reflects passion and prejudice on the part of the jury. At the time of trial it was clear that Pennsylvania law required punitive damages to be proportionate or reasonably related to the amount of compensatory damages, *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1279 (3d Cir.1979); *Neal v. Carey Canadian Mines, Ltd.,* 548 F.Supp. 357, 377 (E.D.Pa.1982), and the jury was so instructed. Several recent decisions of the Pennsylvania Superior Court have cast some doubt on whether the proportionality or reasonable relationship requirement is still a part of Pennsylvania law. *See Rhoads v. Heberling,* 306 Pa.Super. 35, 451 A.2d 1378 (1982) (no error where jury charge does not include

reasonable relationship language); *Feld v. Merriam,* — Pa.Super. —, 461 A.2d 225 (1983) (reasonable relationship required), *petition for allowance of appeal granted* (September 2, 1983); *Daley v. John Wanamaker, Inc.,* — Pa.Super. —, 464 A.2d 355 (1983) (court does not explicitly take a position on the question). Since the jury instruction in this case included reasonable relationship language, the suggestion that Pennsylvania law no longer requires a reasonable relationship between punitive and compensatory damages does not present a ground for a new trial, since the charge was favorable to the defendant and could not have caused it prejudice.

 Regardless of the current state of Pennsylvania law with respect to charging the jury that there must be a reasonable relationship of punitive damages to compensatory damages, Pennsylvania law clearly provides that a trial court has the authority to order a remittitur of damages when the trial judge is convinced that the damages are so excessive as to shock his sense of justice. *Daley,* — Pa.Super. at —, 464 A.2d at 357; *See Murray v. Fairbanks Morse,* 610 F.2d 149, 152–53 (3d Cir. 1979); *Curtis Publishing Co. v. Butts,* 351 F.2d 702, 717–19 (5th Cir.1965), *aff'd* 388 U.S. 130, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (affirming remittitur of punitive damages from $3,000,000 to $400,000); *Marder v. Conwed Corp.,* 75 F.R.D. 48 (E.D.Pa.1977). A court must recognize, however, that the award of punitive damages is generally a matter within the province of the jury, and that the jury's award should not be disturbed unless it is so grossly excessive as to offend the conscience of the Court and to shock its sense of justice. *Daley,* — Pa.Super. at —, 464 A.2d at 358–59; *Murray,* 610 F.2d at 152–53.

 The punitive damages award in this case was so grossly excessive as to shock the conscience of this Court. First, the award is almost eighteen times the compensatory damage award of $30,000, which compensatory damage award was, in the Court's view as well as the jury's, an

adequate reflection of the harm inflicted by the defendant. Although, as heretofore pointed out, the Pennsylvania law appears to be in a state of change as to whether punitive damages must be proportionate or reasonably related to compensatory damages, the absence of any kind of reasonable relationship in this case is certainly a factor which the Court may take into consideration in determining that the award is excessive. In addition, there was no evidence that the defendant was engaged in sustained harmful activity against the plaintiff, which could require the imposition of a large award to insure that the conduct cease. The purpose of punitive damages is to punish wrongful conduct and to deter its repetition. There is no question that punitive damages of an amount less than $537,500 will sufficiently fulfill this purpose. The Court cannot agree with the defendant, however, that the entire punitive damages award must be stricken as the product of passion and prejudice. The defendant has not pointed to any basis, other than the amount of the award, for a finding that the jury was impassioned or prejudiced. Although the Court does feel the award was excessive, the excessiveness appears attributable to excessive outrage over the total lack of regard for the rights of the plaintiff which the defendant exhibited in this matter.

 The Court is aware that it may not reduce a damages award simply because it may, as a factfinder, have awarded a different amount. *Daley,* — Pa.Super. at —, 464 A.2d at 359; *Murray,* 610 F.2d at 152. The Court's role is merely to insure that the award does not shock the sense of justice or offend the conscience. Based on the findings that the defendant engaged in outrageous conduct and published the article with knowledge of its falsity or reckless disregard of its truth or falsity and based on the other evidence in this case, a punitive damages award of $200,000 would not shock the Court's sense of justice. We note that this award would still be over six times the amount of the compensatory damages awarded. *See*

*Chuy*, 575 F.2d at 1279 (affirming punitive award of six times the compensatory award); *Montgomery v. Dennison*, 363 Pa. at 269, 69 A.2d at 527–28 (affirming reduction of punitive award from $5,000 to $2,500); *Burnett v. National Enquirer, Inc.*, 144 Cal.App.3d 991, 193 Cal.Rptr. 206 (1983), *petition for review denied*, 52 U.S. L.W. 2236 (Cal. October 6, 1983) ($1.3 million jury award reduced to $750,000 by trial court and to $150,000 by appellate court).

The defendant's motion for a new trial will therefore be granted, unless the plaintiff shall, within twenty days of the date of the Order accompanying this Memorandum, file a remittitur for the amount of the punitive damages award in excess of $200,-000. The amount of the compensatory damages award is to remain undisturbed. The defendant's motion for judgment notwithstanding the verdict will, for all of the reasons stated in this Memorandum, be denied. An Order follows.

### ORDER

AND NOW, this 17th day of November, 1983, upon consideration of the defendant's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, and the plaintiff's opposition thereto, for the reasons stated in this Court's Memorandum of November 17, 1983,

IT IS HEREBY ORDERED:

1. The defendant's motion for judgment notwithstanding the verdict is DENIED.

2. The defendant's motion for a new trial is GRANTED, unless the plaintiff shall, within twenty days of the date of this Order, state in a writing filed with the Clerk of the United States District Court for the Eastern District of Pennsylvania that he consents to a remittitur of the punitive damages awarded above the sum of $200,000; the award for compensatory damages in the amount of $30,000 to remain undisturbed. In the event the plaintiff files such a remittitur, the defendant's motion for a new trial is DENIED, and the judgment entered on July 19, 1982 is AMENDED so that "the sum of FIVE HUNDRED SIXTY–SEVEN THOUSAND

FIVE HUNDRED DOLLARS ($567,500)" reads "the sum of TWO HUNDRED THIRTY THOUSAND DOLLARS ($230,000)", and the judgment shall read "IT IS ORDERED that judgment be and the same is hereby entered in favor of the plaintiff, FRANK J. MARCONE, and against the defendant, PENTHOUSE INTERNATIONAL, LTD., in the sum of TWO HUNDRED THIRTY THOUSAND DOLLARS ($230,-000)."

### ON MOTION FOR RECONSIDERATION

The plaintiff has moved for reconsideration of this Court's Order of November 17, 1983 granting the defendant's motion for a new trial unless the plaintiff consents to a remittitur of the punitive damages awarded by the jury in excess of $200,000. The Order also states that in the event the plaintiff files such a remittitur, the motion for new trial is denied. The plaintiff asks the Court to reconsider its Order of a remittitur or, in the alternative, to condition the grant of a new trial on a remittitur of a lesser amount. The plaintiff also asks for clarification of whether the Court intended the new trial to be on all issues or just on the issue of punitive damages, and contends that any new trial should be limited to a determination of the amount of punitive damages to be awarded. The defendant has opposed the motion for reconsideration.

The Court has reconsidered its decision to grant a remittitur in this case and finds that the plaintiff has presented no reasons for the Court to change its decision. The Court carefully considered the question of remittitur in its earlier Memorandum, at 334–336, and set forth in detail its reasons for granting the remittitur. The Court also set forth in detail the applicable law and does not consider it necessary to restate its reasons for granting the remittitur.

The plaintiff in his motion for reconsideration directs the Court's attention to *Rosenbloom v. Metromedia, Inc.*, 289 F.Supp. 737 (E.D.Pa.1968), *rev'd* 415 F.2d 892 (3d

Cir.1969), *aff'd* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), and *Thomas v. E.J. Korvette, Inc.*, 329 F.Supp. 1163 (E.D.Pa. 1971), *rev'd* 476 F.2d 471 (3d Cir.1973). In each of these cases, substantial punitive damages remittiturs were granted, and in our analysis both cases support the grant of a remittitur in the present case.

 There remains the question of the scope of the retrial. A new trial following a remittitur may be partial or full. 6A J. Moore, Moore's Federal Practice ¶ 59.-08[6] at 59–158, ¶ 59.08[7] at 59–193. The question whether the retrial should be on all issues or only on damages issues is addressed to the discretion of the trial judge. *Cosentino v. Royal Netherlands Steamship Co.*, 389 F.2d 726 (2d Cir.), *cert. denied*, 393 U.S. 977, 89 S.Ct. 441, 21 L.Ed.2d 438 (1968) (new trial on all issues following reduction of compensatory damages award); *See Stanton v. Astra Pharmaceutical Products, Inc.*, 718 F.2d 553, 576 n. 42 (3d Cir.1983) ("scope of review in determining the propriety of an order granting only a partial retrial is whether the district court abused its discretion in so ruling").

The general rule as to when a partial retrial may be ordered has been stated by the Supreme Court in *Gasoline Products Co., Inc. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1931):

> Where the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.

The Third Circuit has recently applied this standard to reverse the award of a partial new trial where evidence of a compromise verdict was present. *Stanton*, 718 F.2d at 576–78. *See Heckman v. Federal Press Co.*, 587 F.2d 612, 619 (3d Cir.1978) (applying standard and ordering a new trial on both liability and compensatory damages issues). The Circuit also cited *Gasoline Products* in an older decision declining to award a partial retrial, as opposed to a full

retrial, after reversal of an award of punitive damages. *Smyth Sales v. Petroleum Heat & Power Co.*, 141 F.2d 41 (3d Cir. 1944). In *Smyth Sales*, Judge Maris, writing for the panel, stated the following:

> It is apparent, therefore, that the determination of the amount of punitive damages, if any, to be awarded under the Connecticut law cannot appropriately take place except in connection with the consideration by the jury of the whole question of the defendant's liability and of all the circumstances which it is asserted give rise to that liability. It would, therefore, be inappropriate for us under these circumstances to direct what under other circumstances we might well be inclined to order, namely, a new trial of the issue of damages only. *Gasoline Prods. Co. v. Champlin Refining Co.*, 1931, 283 U.S. 494, 51 S.Ct. 513, 75 L.Ed. 1188.

141 F.2d at 45. *See Atlantic Coast Line Railroad Co. v. Bennett*, 251 F.2d 934, 939 (4th Cir.1958) (reads *Smyth* to say that determination of punitive damages requires "consideration by the jury of the whole case;" orders new trial on all issues should the plaintiff decline a punitive damages remittitur): *See also Fury Imports, Inc. v. Shakespeare Co.*, 554 F.2d 1376, 1389 (5th Cir.1977), *cert. denied*, 450 U.S. 921, 101 S.Ct. 1369, 67 L.Ed.2d 349 (1981) ("an award of punitive damages should rest on the jury's assessment of all the evidence in the case;" retrial on all issues ordered). Several recent cases have held that when a new trial is conditioned upon the plaintiff's acceptance of a punitive damages remittitur, the new trial should be on all issues because the issue of punitive damages is intertwined with the liability issues and a partial retrial would create confusion and uncertainty. *See Malandris v. Merrill Lynch, Pierce, Fenner & Smith*, 703 F.2d 1152, 1178 (10th Cir.1981); *Slater v. KFC Corp.*, 621 F.2d 932, 938 (8th Cir.1980); *Alley v. Gubser Development Corp.*, 569 F.Supp. 36, 41 (D.Colo.1983).

 The Court is, however, aware of several recent cases from other jurisdic-

tions granting a remittitur of punitive damages with the resulting new trial, upon decline of the remittitur, to be limited solely to the amount of punitive damages. *See Spaeth v. Union Oil Co. of California,* 710 F.2d 1455, 1460 (10th Cir.1983); *Brink's Inc. v. City of New York,* 546 F.Supp. 403, 415 (S.D.N.Y.1982), *aff'd,* 717 F.2d 700 (2d Cir.1983); *Rosenbloom,* 289 F.Supp. at 749; *Rosener v. Sears, Roebuck & Co.,* 110 Cal.App.3d 740, 168 Cal.Rptr. 237 (1980). Although none of these cases has set forth in detail the rationale for ordering a partial new trial, it is apparent that considerations of economy and efficiency, as well as fairness to the verdict winner, provide strong justification for the grant of a partial new trial in appropriate circumstances. *See, e.g., Brink's Inc.,* 546 F.Supp. at 415 (court notes that first trial was long and fully addressed the issues). As stated in *Yates v. Dann,* 11 F.R.D. 386, 392–93 (D.Del.1951):

> The theory behind [Fed.R.Civ.P. 59 is that] a party who has already had his day in court as to a particular issue may not have another opportunity to relitigate the same point unless a partial new trial will result in a miscarriage of justice. I think F.R. 59 was intended to prevent the retrial of any issue already properly decided, and to limit any new trial only to those issues which are incorrectly decided or not decided at all.

If an issue has been fairly and fully tried, it should not, in fairness to the verdict winner, be retried unless its retrial is necessary because of its relationship to the issues requiring retrial. The determination as to the scope of a retrial cannot be made solely by reference to a general rule, but requires examination of the circumstances of the particular case.

■ In the present case, the issue of the punitive damages to be awarded upon a retrial cannot be separated from the question whether the defendant acted with actual malice, that is, with knowledge of the falsity of the statements concerning the plaintiff or with reckless disregard of their truth or falsity. The issue of the existence of actual malice will therefore be resubmitted to the jury upon retrial should the plaintiff decline to accept the punitive damages remittitur.

■ The Court believes, however, that the questions of negligence and the amount of compensatory damages should not be resubmitted to the jury upon retrial. The Court believes that these questions were fully and fairly decided by the jury. There is no hint that the jury's findings on these questions were the result of compromise and the Court does not believe that these findings were the result of passion or prejudice or influenced by the excessive amount of punitive damages awarded. Further, no injustice to the defendant will result if the issues of negligence and compensatory damages are not resubmitted to the jury. All of the circumstances concerning the existence or absence of actual malice will be before the jury at retrial, since it is necessary that the jury have this evidence in determining whether punitive damages should be awarded and, if so, the amount of the punitive damages. The jury may also be instructed as to the amount of the compensatory award, so that it is able to take this amount into consideration in determining the amount of punitive damages, to the extent this remains a relevant consideration in the award of punitive damages under Pennsylvania law. The jury will therefore have before it all of the factual circumstances relevant to a determination of punitive damages.

The Court will therefore enter an order granting the plaintiff until December 21, 1983 to file a writing with the Court that he consents to remittitur of the punitive damages awarded by the jury in excess of $200,000; otherwise, a new trial will be granted as to whether the defendant acted with actual malice and, if so, the amount of punitive damages, if any, to be awarded. The jury's findings that the defendant acted negligently and that the plaintiff is entitled to compensatory damages of $30,000 shall remain undisturbed.

The Order follows.

ORDER

AND NOW, this 14th day of December, 1983, upon consideration of the plaintiff's motion to alter or amend the Order of the Court of November 17, 1983, and to stay proceedings, and the defendant's response thereto, for the reasons stated in this Court's Memorandum of December 14, 1983,

IT IS HEREBY ORDERED:

1. Paragraph 2 of this Court's Order of November 17, 1983 is VACATED.

2. The defendant's motion for a new trial is GRANTED, with the new trial limited to the issues of the existence of actual malice and the amount of any punitive damages to be awarded, unless the plaintiff shall, on or before December 21, 1983, state in a writing filed with the Court that he consents to a remittitur of the punitive damages awarded above the sum of $200,-000; the award of compensatory damages in the amount of $30,000 to remain undisturbed. In the event that plaintiff files such a remittitur, the defendant's motion for a new trial is DENIED, and the judgment entered on July 19, 1982 is AMENDED so that "the sum of FIVE HUNDRED SIXTY–SEVEN THOUSAND FIVE HUNDRED DOLLARS ($567,500)" reads "the sum of TWO HUNDRED THIRTY THOUSAND DOLLARS ($230,000)", and the judgment shall read "IT IS ORDERED that judgment be and the same is hereby entered in favor of the plaintiff, FRANK J. MARCONE, and against the defendant, PENTHOUSE INTERNATIONAL, LTD., in the sum of TWO HUNDRED THIRTY THOUSAND DOLLARS ($230,000)."